No. 38,526

WILLIAM B. SODEN and GLADYS G. SODEN, *Appellees,* v. GEORGE E. BENNETT, doing business as GEORGE BENNETT CONSTRUCTION CO., *Appellant.*

(244 P. 2d 1204)

Opinion filed June 7, 1952.

*Willard L. Phillips,* of Kansas City, argued the cause, and *Thomas M. Van Cleave,* of Kansas City, and *Albert Thomson* and *Harold T. VanDyke,* both of Kansas City, Mo., were with him on the briefs for the appellant.

*Charles S. Schnider,* of Kansas City, argued the cause, and *Joseph Cohen, Thomas E. Joyce, John E. Shamberg* and *Joseph P. Jenkins,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action by parents to recover damages for the death of their son, alleged to have been caused by the negligence of the defendant while engaged in the performance of construction work on a highway under a contract with the board of county commissioners of Wyandotte county. The plaintiffs recovered and the defendant appeals.

The pleadings are not in question, hence it is only necessary to refer to portions thereof essential to a proper understanding of the vital appellate issues involved.

Thus limited allegations of the petition read:

"Plaintiffs further state that Frances Road is a public road and highway in Wyandotte County, Kansas, running North from Kansas State Highway No. 132 to U. S. Highway No. 40, and crosses and intersects State Highway No. 32; that the said Frances Road at a point between State Highway No. 132 and State Highway No. 32 turns abruptly to the West.

"Plaintiffs further state that on or about the 23rd day of August, 1947, at or about the hour of 11:45 o'clock P. M. their said son was driving these plaintiff's 1941 Chevrolet sedan North on the said Frances Road, that when he reached the turn in said road between the said Highway No. 132 and Highway No. 32 as aforesaid, and in attempting to negotiate said turn, his said automobile was caused to run off the paved portion of the road onto the shoulder on the right or East side of the road, causing said automobile to turn over and go down the embankment located there, and causing their said son to receive severe injuries from which he died at approximately 12:20 o'clock A. M., August 24, 1947.

"Plaintiff further states that said accident and the death of their son as the result thereof was caused by the carelessness and negligence on the part of the defendant in the following particulars, to-wit:

"That the said defendant had contracted with the officials of Wyandotte County, Kansas, to build or re-build said road, and were in the process of completing said contract at the time of said accident; that in doing so, they had constructed a black top pavement and had constructed dirt shoulders on either side of said road, and had caused said shoulders and black top pavement to be covered with a smooth surface of oil so that the paved portion of said road and the shoulders thereof looked the same to a person who might be driving on said road, especially at night. That at the point of the accident the roadway and shoulder of the road were about ten feet above the general level of the land on which it was built. That the said defendant carelessly and negligently failed to erect warning signs to motor traffic that might be using said Frances Road advising said motor traffic and particularly these plaintiffs' son that the road was still under construction, or warning their son or other persons using said road that the shoulders of the road were soft, or warning their said son of the place where the black top hard surface ended and the soft shoulders of the road began, and warning their said son that a curve existed in said road at said point. That as the result of said carelessness and negligence their said son was caused, suffered and permitted at said point above mentioned, to drive his car off the paved portion of the road and onto the shoulder causing the said automobile which he was driving to turn over said embankment, resulting in his injuries and death aforementioned."

The defendant's answer includes a general denial, admissions to the effect he contracted with the board of county commissioners of Wyandotte county to do the construction work in question according

to plans and specifications submitted by such board, and averments charging the death of plaintiff's son resulted from his own contributory negligence.

Allegations of new matter in the answer, including those relating to contributory negligence, are denied by the plaintiffs' reply.

On the foregoing issues as joined by the pleadings the case came on for trial by a jury. During the course of the trial a demurrer to plaintiffs' evidence and a motion for a directed verdict, each based on grounds plaintiffs' evidence failed to prove a cause of action and established plaintiffs' deceased son was guilty of contributory negligence as a matter of law, were filed by the defendant and overruled by the trial court. The case was then submitted to the jury, after instructions by the trial court, along with seven special questions. Thereafter the jury returned a general verdict for plaintiffs in the sum of $15,000.00 together with its special findings.

The interrogatories submitted by the court and the answers made thereto by the jury read as follows:

"Question No. 1. State in feet how far from the point where the automobile driven by William Vincent Soden left the highway, did it finally come to rest. Answer: 30' to 40'.

"Question No. 2. As William Vincent Soden drove his automobile north on the road immediately prior to the accident, was it traveling at a rate of speed greater than was reasonable and prudent under the conditions then and there existing? Answer: No.

"Question No. 3. Immediately prior to the accident did William Vincent Soden drive his automobile at such speed so as to articulate his speed with his ability to stop or turn aside within the vision provided by his headlights? Answer: Yes.

"Question No. 4. Was the death of William Vincent Soden caused by an accident defined by the court's instruction? Answer: No.

"Question No. 5. How many feet did the right wheels of the automobile driven by William Vincent Soden travel from the point where they left the paved portion of the road to the point where they left the shoulder of the road? Answer: 20' to 25'.

"Question No. 6. If you return a verdict in favor of the plaintiffs, state specifically each and every act of negligence of which you find the defendant, George E. Bennett, guilty. Answer: No warning signs of any kind.

"Question No. 7. Did the speed at which William Vincent Soden drove his automobile immediately prior to the accident directly contribute to such accident? Answer: No."

At the request of the defendant the jury was instructed the answer to question No. 6 was a conclusion, not a statement of fact, and should be clarified. After receiving this instruction the jury made the following answer to such question:

". . . The failure of George E. Bennett to erect or leave erected barricades and warning signs that the road was under construction."

The record discloses that following the rendition of judgment for the amount of damages assessed by the jury in its verdict and the overruling of separate motions to set aside certain special findings, for judgment *non obstante veredicto*, and for a new trial the defendant gave notice of his intention to appeal (*a*) from the judgment; (*b*) from the order overruling the demurrer to the evidence; (*c*) from the order overruling the motion for an instructed verdict; and (*d*) from the order overruling the motion for a new trial.

In this court defendant seeks a reversal of the judgment and the remanding of the cause for a new trial under a specification of errors charging the trial court erred (1) in overruling his demurrer to the evidence; (2) in overruling his motion for a directed verdict; (3) in the admission and in the exclusion of evidence; (4) in refusing to permit him to amend his answer; (5) in refusing to give two of his nine requested special questions; (6) in refusing to give certain of his requested instructions; (7) in giving the instructions submitted; and (8) in overruling his motion for a new trial.

This was a hotly contested lawsuit involving more controverted legal questions than are ordinarily to be found in actions of its character. In fact so many of these questions are argued on appeal that it will be necessary to dispose of some of them in a summary fashion.

In a general way it can be said questions pertaining to contributory negligence on the part of appellees' son at the time of the accident were resolved in their favor in the court below on disputed evidence in such a manner the record discloses no sound ground for reviewing them. This, of course, means the important issues involved on appellate review have to do with questions pertaining to the appellant's liability under conditions and circumstances disclosed by the record and alleged trial errors.

Little controversy exists respecting the facts on which the appellant's liability must stand or fall. Highly summarized, and without reference to questions pertaining to contributory negligence which as we have indicated need not be labored, they can be stated thus.

Early in the spring of 1947 appellant entered into a contract with the board of county commissioners of Wyandotte county to reconstruct the portion of Francis Road described in the petition, the road to be constructed of bituminous macadam, eighteen feet wide with five feet dirt shoulders on each side. Shortly after entering

into this contract appellant commenced to construct the road in accord with its terms. Thereafter, on dates not now material, without entering into any new written agreement or giving a new contractor's bond, he entered into some sort of an understanding or agreement with the county whereby he agreed to seal coat the macadam and shoulders of the road, to erect certain guide posts, signs and markers connected therewith, and to construct quarry spalls along the sides of the shoulders. The signal signs to be put up were stop signs, speed signs, curve signs, etc.

Shortly after executing the original contract appellant commenced work on the road and worked there continuously until just a few days prior to August 23, 1947, the date on which the involved accident occurred.

There can be little doubt from the record that about the middle of August surface work on the road had been completed and that through some *oral* arrangement or understanding with the county engineer appellant removed the construction signs he had been maintaining, moved his machinery and crews away, and left the road open for travel by the public without protecting it with warning signs of any kind or character. Neither can there be any question regarding the fact that at such time he had' finished construction of the surface of the road in conformity with the contract plans and specifications. Nor can there be any doubt that at such time the bituminous macadam and the shoulders of the road had been sealed with a dark brown or black oily substance which made it look as if both the road proper and the shoulders were black top all the way across, also that at that time the shoulders were soft, spongy, and in a dangerous condition so far as the traveling public was concerned.

It was with the road in the condition last described and under circumstances and conditions as related in the second paragraph of the petition heretofore quoted that appellees' son sustained the injuries resulting in his death.

During the course of the trial out of the hearing of the jury but in the chambers of the trial court, the appellees introduced, as one of their exhibits, a folder containing a copy of the road contract, a copy of the proposal and the schedule of prices submitted by the appellant, the standard specifications for Wyandotte county benefit district road and bridge construction, the road contractor bond, and the road contractor statutory bond, all of which were given con-

sideration by the trial court. We are told, and it is not denied, these documents contained provisions making the 1945 standard specifications for state road and bridge construction of the State Highway Commission of Kansas a part of the contract and that such specifications were also introduced in evidence.

Portions of the standard state specifications last referred to, having particular application to the issues here involved, read:

"The convenience of the general public and the residents along the highway and the general protection of persons and property are the prime importance and shall be provided for by the contractor in an adequate and satisfactory manner. ( § 7, ¶ 7.7.)

"The contractor shall at his expense and without further or other order, provide, erect, and maintain at all times during the progress or temporary suspension of the work, suitable barricades, fences, signs or other adequate protection, and shall provide, keep and maintain such danger lights, signals and watchmen as may be necessary, or as may be ordered by the engineer to insure the safety of the public as well as those engaged in connection with the work.

"The contractor's responsibilities for the maintenance of barricades and lights on any individual item of work included in the contract shall cease only when released in writing by the engiener. ( § 7. ¶ 7.8.)

"The engineer shall use every precaution possible to safeguard the persons and property of the traveling public and to divert traffic from the road on which construction work is in progress, but the failure of the engineer to notify the contractor to maintain barriers, lights, signals or watchmen shall not operate to relieve the contractor from his responsibility. ( § 7, ¶ 7.8.)

"The contractor shall assume all risks and liability for accidents and damages that may occur to persons or property during the prosecution of the work by reason of negligence or carelessness of himself, his agents or employees, and shall assume also all direct or indirect damage that may be suffered or claimed on account of any such construction or improvement during the time thereof and until the highway is accepted." ( § 7, ¶ 7.12.)

To complete the factual picture, it should perhaps be added, the record discloses ( a ) without stating who was responsible for doing so that on August 26, less than three days after the accident in question, slow signs and signs advising the public that travel was at its own risk were put up on the road; ( b ) that sometime during the middle of September appellant returned to the road with whatever men and equipment were required and erected signs and quarry spalls heretofore referred to as having been agreed upon under some understanding and agreement after the date of the original contract; ( c ) that on September 16 the county engineer wrote the board of county commissioners requesting that body to accept the road; ( d ) that the county engineer never, either before or after the accident, gave the appellant any release in writing; and ( e ) that

the road was not accepted by the board of county commissioners until December 4, 1947.

The primary contention urged by appellant as grounds for reversal of the judgment is that the rulings of the trial court on his demurrer to the evidence and his motion for a directed verdict, and we might add rulings on matters complained of under his assignments of error Nos. 3, 5, 6 and 7 were all based on the theory that he had an obligation under G. S. 1949, 68-121, to maintain "road closed" signs until the road in question was formally accepted by the board of county commissioners of Wyandotte county. We do not so read the record. What the trial court actually did, notwithstanding appellant's repeated attempts to induce it to hold that he had no liability under the provisions of 68-121, *supra*, because the evidence disclosed he had completed construction of the surface of the road and had the engineer's oral permission to move away, was to repeatedly and consistently hold that under a contract such as was involved in the action, wherein he had agreed to be liable for all the matters and things described in the standard specifications, heretofore quoted, appellant was liable for his actionable negligence, if any, occurring as the result of the construction work undertaken up to the date on which the job was turned over to and officially accepted by the involved board of county commissioners. A review of the record discloses the trial court pointed out that this was its theory on divers occasions throughout the trial but we need not detail those instances or encumber the record with them for its position is definitely and clearly stated in Instruction No. 26 which reads:

"You are further instructed that the question of whether the defendant, George E. Bennett, doing business as the George Bennett Construction Company, had or had not completed the construction of the Francis Road job as provided by the terms of his contract with the Board of County Commissioners of Wyandotte County, Kansas, mentioned in the evidence in this case, has nothing whatsoever to do with the issues involved in this case. *In that connection, you are further instructed that under the laws of the State of Kansas, the contractor, under a contract such as has been mentioned herein, is liable for his actionable negligence, if any, occurring as the result of such construction work from the date upon which said work is undertaken by the contractor up to the date upon which said job is turned over to and officially accepted by the Board of County Commissioners of the county with whom said contract was executed.* And in this case, the Court has held, as a matter of law, that the Francis Road job was accepted officially from the contractor by the Board of County Commissioners of Wyandotte County, Kansas, on December 4, 1947." (Emphasis supplied.)

We are not here called upon to determine the liabilities or obligations of a contractor under the provisions of 68-121, *supra*. In the instant case, whatever his rights under the provisions of such section of the statute may have been, appellant engaged to erect and maintain at all times during the progress or temporary suspension of the work, suitable barricades, fences, signs, or other adequate protection and to provide, keep, and maintain such danger lights, signals, and watchmen as might be necessary to insure the safety of the public. He agreed that his responsibility for the maintaining of barricades and lights should cease only when released in writing by the engineer. He stipulated that failure of the engineer to notify him to maintain barriers, lights or a watchman should not operate to relieve him from that responsibility. And last but not least he contracted not only to assume all risks and liabilities for accidents and damages that might occur to persons or property during the prosecution of the work by reason of that negligence or carelessness of himself, his agents, and his employees but also to assume all direct or indirect damage that might be suffered or claimed on account of any such construction or improvement during the time thereof and until the highway was accepted. Assuming, without deciding, the foregoing obligations and liabilities were more than would have been required of him under the provisions of 68-121, *supra*, he had the right to incur them and, having done so he, cannot now be heard to say his liability for negligence under the contract ceased until he had been discharged therefrom in accord with its terms, namely, when he had been released in writing by the engineer or when the highway was accepted by the board of county commissioners. Since no one contends he had been discharged from liability in the manner agreed upon the result is the trial court's theory of the case was correct and that its Instruction No. 26, as well as its rulings of like import respecting other matters, to the effect the question whether appellant had or had not completed construction of the road had nothing whatsoever to do with the issues in the case, were proper. For one of our own decisions which, if it does not sustain, certainly supports this conclusion see *Mundell v. Amerman*, 116 Kan. 272, 226 Pac. 757.

Having concluded as above indicated it necessarily follows the trial court did not err (*a*) in refusing to permit appellant to cross-examine appellees' witnesses with respect to when work on the surface of the road was completed; (*b*) in rejecting evidence of

that character by appellant's witnesses; (c) in refusing to submit two special questions to the jury calling for answers on that subject; (d) in refusing to give instructions requested by appellant predicated on the theory that his liability ceased when work on the surface of the road was completed; and (e) in giving, as we have heretofore indicated, instruction No. 26 in form as quoted.

Once it is determined appellant's liability under the contract did not cease until the job in question was accepted by the board of county commissioners we have little difficulty, after reviewing the facts of the record to which we have heretofore referred, in determining that the trial court did not err in overruling appellant's demurrer to the evidence or his motion for a directed verdict. The appellees' evidence, in our opinion if believed, was sufficient to establish that, in the condition heretofore related, the road was defective and dangerous to travel and that appellant was guilty of actionable negligence in going away and leaving it open for use as a highway without first erecting suitable warning signs advising the public of that fact. We know of, and are cited to, no Kansas decisions holding to the contrary under the existing conditions and circumstances. It is certain that *Engler v. Aldridge,* 147 Kan. 43, 75 P. 2d 290, or *Tillotson v. Fair,* 160 Kan. 81, 159 P. 2d 471, on which appellant relies, do not do so. The most that can be said for either of those decisions from his standpoint is that they hold a contractor employed by a municipal corporation to make a public improvement who performs that contract according to plans and specifications with proper care and skill is not liable for damages to abutting property owners after the work has been completed and the improvement turned over to and accepted by the municipality.

In an obvious attempt to forestall the foregoing conclusions appellant asserts the contract was not pleaded. So what? Appellees' son had no agreement with the appellant and of necessity their cause of action was founded on negligence. We do not understand that in such an action a plaintiff is obliged to plead a contract simply because it becomes material to a decision of some issue involved in the case. With the same object in view it is argued the contract was not properly introduced in evidence and therefore entitled to no consideration. Heretofore we have indicated the manner in which that instrument was offered in evidence. It must be conceded its admission in the absence of the jury was irregular. Even so that action did not affect appellant's substantial rights for con-

struction of the contract was the trial court's function and of no concern to the jury. This, under express direction of our code of civil procedure G. S. 1949, 60-3317, means this technical error must be disregarded.

Another error assigned is based on the trial court's refusal to permit appellant to amend his answer by adding an eighth ground of contributory negligence charging appellees' son was under the influence of alcohol at the time of the accident. This request was made on April 19, 1951. In refusing it the court called attention to the fact the accident had happened almost four years before, that appellant's answer was filed on November 18, 1949, that his amended answer was filed two months later, and that under his own testimony any information he had on the subject was acquired as early as September, 1947. The court then stated that in view of such facts it felt it would be improper to permit the amendment. Under the foregoing conditions and circumstances the allowance of the request was within the sound discretion of the trial court and we cannot say its refusal to permit the amendment resulted in an abuse of that discretion. In connection with a phase of the matter just mentioned appellant attempted to introduce testimony tending to show the appellees' son was under the influence of alcohol on the night of the accident notwithstanding in his opening statement the court and jury were specifically advised he was not contending Bill Soden (the son) was intoxicated. He now contends it was error to exclude evidence on that subject. We are inclined to the view that ordinarily this testimony would have been admissible as a circumstance to be considered in determining certain other grounds of contributory negligence charged in the answer, particularly those charging the son with failure to operate his automobile with due care and in a proper manner. Nevertheless, in the face of an admission such as appellant made at the opening of the trial, we are unwilling to say that rejection of this testimony constitutes reversible error.

Appellant's motions to set aside special finding No. 6 and for judgment *non obstante veredicto* were filed after rendition of judgment, along with his motion for a new trial. All three motions were presented and ruled upon at the same time. The rulings on the two motions first mentioned are not specified as error and of course action with respect thereto could not have been included in the motion for new trial. Under the circumstances objections

now urged respecting the propriety of such rulings, even if meritorious, are not subject to appellate review. In any event, appellant's further contention that the answer to question No. 6 absolved him from all other grounds of negligence pleaded cannot be sustained because the negligence found by the answer to that question is pleaded in the petition.

Under his specification of error challenging the trial court's action in overruling his motion for a new trial appellant contends the verdict was so excessive as to compel a conclusion it was rendered under the influence of passion and prejudice. The established rule of this jurisdiction is that in order for a verdict and judgment in an action of the character here involved to be set aside or reduced as excessive it must appear, from all the facts and circumstances disclosed by the record, they are so large as to shock the conscience of the court. That the verdict in this case was liberal cannot be questioned. However, that fact in and of itself does not mean that it should be disturbed. After a careful examination of all pertinent evidence on the subject we cannot say the verdict and judgment in the instant case are so excessive as to shock our judicial conscience. It necessarily follows the size of the verdict itself was not so excessive as to indicate bias or prejudice on the part of the jury and we find nothing in the record to indicate it was guilty of conduct of that nature in any other respect. The result is the record does not warrant a remittitur or a reversal of the judgment on the ground relied on.

There is no necessity for detailing the complaints advanced by appellant respecting the trial court's action in refusing instructions requested and in the instructions as given. It suffices to say those requested as well as those submitted have been carefully examined in the light of the complaints lodged against them, most of which are based upon appellant's fallacious theory his liability for negligence extended only to the date on which he finished construction of the road, and that we fail to find any irregularities, in either the instructions given or the denial of those requested, of sufficient importance to permit or require a reversal of the judgment.

In conclusion it should be stated that we have not commenced to here answer all of the numerous contentions advanced by the astute and industrious counsel for appellant in their effort to obtain a reversal of the judgment. Many of those not mentioned or discussed deal with the merits of the case and are not mentioned for

that reason. Others are based on the same erroneous theory respecting liability referred to in the preceding paragraph and on that account have been disregarded. Still others material to the issues but not regarded as of sufficient importance to warrant space in the opinion have been considered and rejected.

The judgment is affirmed.