[Civ. No. 9114.   Third Dist.   July 25, 1957.]

THOMAS MICHAEL BRESLIN et al., Appellants, v. CHARLES FREDRICKSON et al., Respondents.

782

Mazzera, Snyder & DeMartini and J. Calvert Snyder for Appellants.

Berry, Davis & Channell and Samuel H. Berry for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment granted on a directed verdict in favor of defendants. Plaintiffs are the surviving spouse and the surviving sons of Laura Catherine Breslin, deceased. She was driving an automobile in which they were riding when it went off State Highway 101B (Dixon-Rio Vista cutoff) in Solano County. She was killed and they were injured. They sue for damages for their own injuries and losses and also as her heirs at law.

It appears that the road on which Mrs. Breslin was driving had needed resurfacing and the Division of Highways of the Department of Public Works had let a contract to respondents for doing that work. The contract covered about three miles of road and required respondents to prepare the existing road surface for resurfacing and to then apply a layer of asphaltic blacktop spread to a width of 18 feet and to a depth of 1 inch, completely covering the previously existing paved surface of the highway. It stands without dispute that respondents had proceeded with the performance of their contract and in full accord therewith had completed the work prior to the occurrence of the accident out of which this action arose; that the resident engineer having supervision over the work had

inspected the same and expressed his satisfaction therewith to respondents; that respondents thereupon moved their men and equipment a distance of several miles and to another portion of the road which they were likewise under contract to repair; that thereafter, but following the accident, respondents' performance of the contract was formally accepted by the Director of Public Works under date of August 11, 1955, and that this acceptance was based upon the recommendation of the resident engineer made before the accident; that respondents were not called upon to do any further work under their contract. There was evidence that before being repaired the old surfacing had deteriorated and that along the edges thereof there were inequalities and indentations and that in places the paving was higher in elevation than the shoulder material; that the shoulders consisted of the natural soil of the area and that it had not been oiled or otherwise strengthened; that when the additional paving material was spread over the existing surface there were places where the shoulder material lay as much as 6 inches below the finished surfacing, so that a car being driven along the paved surface might, if allowed to leave that surface and go on to the shoulder, experience a drop of as much as 6 inches as it left the pavement; that the road was what is known as a crown road, that is there was considerable slope from the middle line of the pavement towards the shoulders. The accident happened about midnight on July 11, 1955, four days after respondents had completed their work and left the job site. There was evidence that as Mrs. Breslin drove along the new surfacing she observed a car approaching her and that by observing its lights it appeared to be close to or over the median line; that she turned slightly to her right, inferably to give safe passage to the approaching car; that in the darkness the black road surfacing was difficult to see with the lights of the oncoming car lowering visibility; that the right front wheel of Mrs. Breslin's car made a sudden drop as it left the surfacing at a point where the shoulder material was below the surfacing from 4 to 6 inches; that she appeared then to lose control of the car; that she turned abruptly to the left, the car came back on to the pavement, but proceeded diagonally across and into the ditch which bordered the shoulder on that side and against a telephone pole, the result of the crash being the death of Mrs. Breslin and the injury of the other occupants of the car.

It stands without dispute that the contract did not require

or authorize respondents to reshoulder the road when they had finished the paving or to do anything other than repave the previously paved portion; that the state itself was responsible for bringing the shoulder material up to the pavement level and that very shortly after respondents left the job site the state proceeded to do that, using its own men and equipment. The work had not been done, however, when the accident happened. It is the contention of appellants that even though their contract did not require respondents to reshoulder the road, nevertheless that contract did require them during the progress of the work, and, as appellants contend, until by formal acceptance of the work they were released from further obligations of care, to protect the public against danger from conditions arising out of and during their use of the job site in the performance of their work; that they were still bound to so protect the public when the accident happened and until their work was accepted and their responsibility ceased, whether they were still physically occupying the job site with men and equipment or had moved men and equipment away; that they failed in the performance of this duty and that, though while they were on the job site they maintained the required safety devices such as lights and warning signs in order to enable the public to safely continue its use of the road, they had, when they left the job site, taken down such safety devices and left the dangerous drop-off condition which caused the Breslin car to leave the road, without warning the public of the existence of the defect; that in so doing they breached a duty of care they owed the traveling public and are responsible for the damages ensuing.

Save as relinquished to respondents so far as appropriate to the performance of their contract, the state had control of the highway with a continuing duty to use care in making and keeping the road safe for the use of the public and this included the duty to avoid the existence of dangerous defects. From liability for failure to perform this duty the state is protected by sovereignty, but still the duty is there. The state, as is usual, elected to have the work of repair done without closing to public travel the section being repaired. Accordingly, though surrendering a certain amount of control to the respondents, the contract contained provisions whereby the duty of protecting the public in its use of the road during construction was cast upon the contractors. The contract provided that whenever the contractor's operations created a

condition hazardous to traffic the contractor should furnish such flagmen and guards as were necessary to give adequate warning of such dangerous conditions to be encountered and should furnish, erect and maintain such fences, barricades, lights, signs and other devices as might be necessary to prevent damage or injury. It was provided that the contractor should be responsible for any liability imposed by law for any damage to any person or property resulting from "defects or obstructions or from any cause whatsoever during the progress of the work or at any time before its completion and final acceptance." It was further provided that on request of the contractor the director might relieve him of the duty of maintaining and protecting certain portions of the work which had been completed in all respects in accordance with the requirements of the contract and to the satisfaction of the engineer and that thereafter, except with his consent, the contractor would not be required to do further work thereon; that in addition such action by the director would relieve such contractor of responsibility for injury or damage to the completed portions of the work resulting from use by public traffic or from the action of the elements or from any other cause "but not from injury or damage resulting from the contractor's own operations or from his negligence." It was further provided that when the engineer had made his final inspection and had determined that the contract had been completed in accordance with the plans and specifications he would recommend that the director formally accept the contract and immediately upon and after such acceptance the contractor would be relieved of the duty of maintaining and protecting the work as a whole and be relieved of his responsibility for injury to persons or property occurring after the formal acceptance.

█ We think it clear that, in view of the use by the public of the road during the contractor's operations, the existence of the sudden drop from the level of the pavement to the adjacent shoulder constituted what the jury could have concluded was a dangerous condition, and that during that period a failure to warn the public of such dangerous condition could have been found to be a violation of the contractor's obligation of due care with the consequence that if a motorist without neglect drove into the depression and was caused to lose control of the car and suffered damage, an award against the contractor therefor would have found support in the record. But, of course, all this is said only on the assump-

tion that there was at the time a duty of care owed by the contractor to the motorist. We hold there was. ■ The fact that the contractor here was not required to reshoulder the road does not mean that while he was controlling the roadway and under an obligation to take due care that the public could use the road with safety he was without duty as to the difference in elevation between the pavement and the shoulder material merely because his work did not extend beyond the edge of the pavement. The contractor's responsibility was not limited to dangerous conditions within the scope of his own work while he was in control of the job site. He was under a duty to protect the public against dangerous conditions existing where the public in rightful use of the roadway might encounter such conditions. The real issue involved in this case is when that responsibility ceased. It is the claim of appellants that it did not cease until, under the provisions of the contract as they construe it, formal acceptance of the work had taken place; that formal acceptance had not occurred and that the contractor's responsibility had not ceased when the accident happened. They argue that respondents' duty to maintain warning and safety devices telling motorists using the road of the dangerous drop-off condition from pavement to shoulder would continue until the contract was formally accepted.

■ Although a contractor is not liable for injuries suffered after completion and acceptance of the work, even though his negligence in performing the contract caused the damage (*Johnston* v. *Long*, 56 Cal.App.2d 834, 837 [133 P.2d 409]), nevertheless it is well established that:

"A highway contractor doing work on a public highway or street owes to the traveling public the duty of protecting it from injury that may result from his negligence. He is under a duty, for instance, to warn travelers of existing hazards during the construction period by the placing of lights, guards, warning signs, and barriers. His failure to place lights on obstructions left on the highway, especially where such lights are required under his contract or by ordinance, constitutes negligence, irrespective of whether the work was being done under proper authority." (25 Cal.Jur. 2d 99-100.)

■ Furthermore, the contractor's liability may be prolonged by the provisions of his contract. The propriety of such provisions is readily apparent. The state necessarily surrenders to the contractor a large measure of control over

the road within the limits of his contract during his work and to that extent withdraws from active supervision and control of the highway on its own account. It, therefore, may properly contract that the duty of safeguarding the traveling public will continue beyond the actual performance of the contractor's work and until there has been such an acceptance by the state and such a release of the contractor from further duty either in the matter of performing his contract or in safeguarding the public as will reestablish the control of the state over the job site. Furthermore, if the contractor so agrees then persons injured by failure on the part of the contractor to reasonably warn them of danger inherent in using the road may hold the contractor responsible by virtue of the fact that he had agreed to perform this duty beyond the actual completion of the work under his contract. In a real sense he is agreeing that until he has surrendered the job site back to the state in accordance with the terms of the contract his duty continues with respect to its use by the public whether the defect causing injury is within the scope of his own work or is simply, as in this case, leaving of the roadway dangerous for use until further work had been done to render it safe. In *Cain* v. *Meade County*, 54 S.D. 540 [223 N.W. 734], it was held that where a county contracted with the state to maintain and repair highways it became liable, because it had so contracted, for defective maintenance even though had it been acting as a public entity it would have been protected by sovereign immunity. In *Soden* v. *Bennett*, 173 Kan. 142 [244 P.2d 1204, 1210], a case strikingly similar to the one before us, a contractor was held liable under a contract containing the same provisions as respondent's contract contained, and where he had completed his work. Said the court:

". . . In the instant case, whatever his rights under the provisions of such section of the statute may have been, appellant engaged to erect and maintain at all times during the progress or temporary suspension of the work, suitable barricades, fences, signs, or other adequate protection and to provide, keep, and maintain such danger lights, signals, and watchmen as might be necessary to insure the safety of the public. He agreed that his responsibility for the maintaining of barricades and light should cease only when released in writing by the engineer. He stipulated that failure of the engineer to notify him to maintain barriers, lights or a watchman should not operate to relieve him from that responsibility.

And last but not least he contracted not only to assume all risks and liabilities for accidents and damages that might occur to persons or property during the prosecution of the work by reason of the negligence or carelessness of himself, his agents and his employees but also to assume all direct or indirect damage that might be suffered or claimed on account of any such construction or improvement during the time thereof and until the highway was accepted. Assuming, without deciding, the foregoing obligations and liabilities were more than would have been required of him under the provisions of 68-121, *supra*, he had the right to incur them and, having done so, he cannot now be heard to say his liability for negligence under the contract ceased until he had been discharged therefrom in accord with its terms, namely, when he had been released in writing by the engineer or when the highway was accepted by the board of county commissioners. Since no one contends he had been discharged from liability in the manner agreed upon the result is the trial court's theory of the case was correct and that its Instruction No. 26, as well as its rulings of like import respecting other matters, to the effect the question whether appellant had or had not completed construction of the road had nothing whatsoever to do with the issues in the case were proper.''

Although we have a number of cases holding that a contractor is responsible for his negligence occurring during the progress of his work, the question of prolongation of liability for the safety of the road under the terms of his contract beyond the point where his work is completed, insofar as research has disclosed, has not come squarely before the courts of this state. ██ For the reasons we have given, however, and on the authority of cases from other jurisdictions we have cited, we think it must and should be held that where the contractor in his contract accepts responsibility for the condition of a public road as made or left by the performance of his contract until a certain type of release has been effected such liability continues and persons injured by defective conditions of the road during such a period may recover against the contractor. It stands without conflict that no formal acceptance of the contractor's work had taken place until a considerable time after the appellants suffered their injuries. There was no proof that the resident engineer was empowered to release respondents from further liability. There was no proof that the respondents sought or obtained release prior to formal acceptance under those provisions of the contract

which provided for such release. It cannot be held as a matter of law that the engineer's satisfaction with the work and his recommendation that it be accepted exonerated respondents for their failure to provide the protection to the public which they had contracted to provide until formal acceptance of the work. It appears from the record that the engineer's recommendation was far from determinative. The engineer himself testified that prior to formal acceptance it was usual for others to inspect the work after he had made the recommendation and he thought this had occurred in the instant case. It is familiar law that the question of whether or not a condition in a public street is actually dangerous and a menace to the safety of the traveling public is one of fact addressed to the triers of fact; that the obligation to exercise reasonable care to keep streets and sidewalks in proper repair is not confined to defects existing in the traveled way; that dangerous or unsafe ditches, excavations, walls or obstructions by the side thereof are included within the rule of liability. (*Alderson* v. *County of Santa Clara,* 124 Cal.App.2d 334, 340-341 [268 P.2d 792], and cases cited.)

It appears from this record, therefore, that the question of whether or not the drop-off from pavement to the shoulder was a defective and dangerous condition was for the jury and that respondents had by contract accepted responsibility to the traveling public from the time they undertook their work until it should have been formally accepted or they had been otherwise released in accordance with the contract's terms. No such release was proved and it was conceded that formal acceptance resulting in release had not occurred. For aught that appears in this record, respondents were liable if appellants were injured as a result of a dangerous condition of the highway. It was error, therefore, to direct a verdict in their favor.

The judgment is reversed.

Schottky, J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied August 19, 1957, and respondents' petition for a hearing by the Supreme Court was denied September 18, 1957. Schauer, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.