Argued April 5, affirmed June 22, 1966

## COLLINS *v.* LANTZ, VICKERY ET AL

415 P. 2d 763

*Otto R. Skopil, Jr.,* argued the cause for appellant. With him on the brief were Williams, Skopil & Miller, Salem.

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for respondent Dayton Plumbing and Heating, Inc.

*Bruce Spaulding,* Portland, argued the cause for respondent Annand. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, Denecke and Schwab, Justices.

## DENECKE, J.

The plaintiff is a mechanical contractor who is suing for damages to a steam tunnel he had constructed but had not yet turned over to the owner at the time it was damaged. The defendant Dayton Plumbing and Heating, Inc., is another mechanical contractor who connected a steam line into plaintiff's steam tunnel. Defendant Annand was the owner's architect for the entire project and designed and partially supervised the project. The trial court, as the trier of fact, found for the defendants and the plaintiff appeals.

This particular steam tunnel damage is one of our most litigated causes. *Collins v. Post,* 227 Or 299, 362 P2d 325 (1961); *Collins v. Lantz,* 234 Or 268, 381 P2d 213 (1963).

The plaintiff built the tunnel as a subcontractor for the general contractor building the Oregon Correctional Institution for the state. The tunnel was completed in August, 1958, but was not taken over by the state because the entire project was not completed

and accepted. As part of the project a separate contract was let to build the superintendent's residence. The general contractor on this residence was Lantz; the mechanical subcontractor was Dayton. (Lantz is not now a party for reasons not relevant to the merits.) The mechanical subcontract called for the running of a steam line off the main steam tunnel and up into the residence. This connecting steam line was put in the latter part of 1958. The steam line was put into operation to heat the residence during its construction. In January, 1959, surface or underground water accumulated under the residence, drained into the tile encasing the steam line, flowed into the main steam tunnel, and caused the damage of which plaintiff complains.

The trial court issued a letter opinion and subsequently signed a general finding submitted by defendants in favor of the defendants. Plaintiff objected to the general finding and submitted proposed special findings. He contends that the court erred in not making special findings. The judgment in this case was entered in 1964 and at that time the law was that whether findings were special or general was within the trial court's discretion. *State Highway Commission ex rel Pantovich Const. Co. v. Brassfield,* 228 Or 145, 148, 363 P2d 1075 (1961).[①]

Plaintiff's principal contention is that there is no evidence to support the trial court's finding and conclusion that there was no negligence or, if there were, that such negligence was not the cause of plaintiff's damage.

■ Plaintiff charged Dayton with being negligent in that they installed the steam line in such a manner

---

[①] Now, by timely request, a party may require special findings. ORS 17.431.

that water could easily enter the steam tunnel and they permitted waste to clog the drain at the residence, which in turn caused water to accumulate and enter the connecting line at its residence entrance and flow into the steam tunnel. The architect, Annand, was charged with being negligent in failing to require Dayton to enter the residence with the steam line in such a manner that any water accumulating would not enter the steam tunnel and, generally, in failing to provide measures for the protection of the steam tunnel.

At the trial there was evidence that even if the steam line had been installed to enter the residence in the way plaintiff claimed it should, and even if the waste had not at least partially clogged the drain, such a large amount of water was coming in under the residence that the water nevertheless would have flowed down the tile encasing the steam line and into the steam tunnel. The trial court's general finding, as elucidated by its letter opinion, is that any negligence upon the part of either defendant at the point where the steam line entered the residence was not the cause of any damage which plaintiff incurred. There was evidence to support such finding and, therefore, it will not be disturbed upon appeal.

What occurred at the other end of the line, the connection between the steam line and the tunnel, is more difficult to explain and resolve.

Exactly how the steam line was connected with the steam tunnel was not clearly shown by the testimony or the sketches made at the trial. Upon oral argument we had the benefit of illustrative diagrams prepared from the trial sketches and the benefit of counsel's explanation.

The connecting steam line consisted of a steam pipe, and return pipe, both enclosed in a tile eight inches

in diameter. The two pipes did not occupy the entire space in the inside of the tile. The water which accumulated under the residence drained down through this unoccupied space inside the tile.

The steam tunnel constructed by plaintiff also contained a steam pipe and return pipe. The steam and return pipes to the residence were connected into these. The main steam and return pipes were also encased in a tile. The space in the tile of the main steam tunnel which was unoccupied by the two pipes was filled with insulation; however, water could and did flow through this insulation.

The plans called for the construction of a manhole at the point where the residence steam line connected with the main steam tunnel. At this manhole, according to the plans, the tile encasing the connecting lines would end as it entered the manhole and before it joined the tile encasing the main lines. The reason for such construction was that any water that might enter the connecting tile at the outlet in the residence would drain off at the manhole where adequate drains were provided to dispose of such water. According to the plans, the tile encasing the main steam pipes would be opened up, the residence lines, but not the encasing tile, connected up to the main lines, and the main tunnel tile resealed. In this manner the main tunnel would be sealed off from any water coming down the tile encasing the connecting lines.

Dayton did not make the connection in the manner above described. Dayton's witnesses testified it changed the method of connection in accordance with the orders of the architect's representative, McRae. Instead of ending the tile encasing the connecting pipes as it entered the manhole before it reached the tile encasing the main pipes, Dayton opened up the main

tile and ran the connecting tile, as well as the pipes contained therein, into the main tile. This would cause any water coming into the connecting tile to flow into the main tunnel tile, which is what happened.

The architect's representative, McRae, was not called as a witness. The testimony was that he was out of the state. McRae was an employee of Bruce Morrison, who was the consulting mechanical engineer employed by the architect. Morrison testified that McRae was not authorized to order a change in the connection of the residence line and the main tunnel. After Dayton had finished the connection, Morrison observed that it did not conform to the plans; he was concerned, and notified Annand. Annand, in turn, called upon someone, supposedly the residence general contractor, Lantz, to change the connection and build it according to the plans. Nothing was done about it; the reason is not known.

██ The contract requiring the connection to be constructed according to plans, and which was not complied with by Dayton, is one between Dayton and the general contractor, Lantz. Collins is a third party to such contract. We have held that a construction contract is admissible in an action by a third party as relevant to the question of whether the defendant used due care. *Waterway Terminals Co. v. P. S. Lord Mechanical Con.,* 242 Or 1, 406 P2d 556, 578-579 (1965). However, we have also stated that in such circumstances the contract does not impose an absolute standard of care. *Waterway Terminals Co. v. P. S. Lord Mechanical Con.,* supra; *Larson v. Heintz Const. Co.,* 219 Or 25, 52-54, 345 P2d 835 (1959). Failure to perform in accordance with a construction contract is evidence of lack of due care, but not necessarily conclusive evidence of lack of due care. In this instance

both the mechanical engineer and the architect were concerned because the connection was not made according to the plans and the connection was planned as it was to keep water out of the tunnel. Nevertheless, the standard is due care, not the requirement of the contract, and we cannot say as a matter of law that the failure to connect in accordance with the contract specifications and in the manner in which it was done is negligence as a matter of law. Therefore, the trial court's general finding, which must be construed as a finding as to this charge of negligence, as well as to the others, that the defendants were not negligent must stand.

Affirmed.