Argued May 7, affirmed August 19, 1970

TUCKER, *Respondent, v.* UNIT CRANE &
SHOVEL CORP., *Appellant.*

473 P2d 862

*William W. McGeorge,* Portland, argued the cause
for appellant. With him on the briefs were Wm. A.
Babcock, Springfield, and Coke, McGeorge & McLeod,
Portland.

*Arthur C. Johnson,* Eugene, argued the cause for respondent. With him on the brief were Johnson, Johnson & Harrang and Barbara B. Aldave, Eugene.

Before MCALLISTER, Presiding Justice, and SLOAN, O'CONNELL, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

DENECKE, J.

This is a products liability case.

Plaintiff's intestate was killed by the collapse of the boom of a crane manufactured by defendant. Plaintiff brought this action for wrongful death both on the theory of negligence and strict liability. The case was tried without a jury, and the court found for plaintiff on both theories. Defendant appeals and its assignments of error are that there was no evidence to substantiate the court's findings.

Defendant's principal contention is that the crane was old and the collapse was caused by the deterioration of age. The crane was built in 1956 and used from that time until the collapse in 1965. Guy F. Atkinson Company purchased the crane in 1956 and used it until 1964 when it was sold to one Eldridge who in 1965 leased it to the father of the decedent.

The defendant has brought to our attention some decisions from other jurisdictions that have held, in effect, that use without incident for an extended period of time conclusively proves nonnegligent manufacture. *Lynch v. International Harvester Co.,* 60 F2d 223 (10th Cir 1932); *Schindley v. Allen-Sherman-Hoff Co.,* 157 F2d 102 (6th Cir 1946). The *Lynch* case was expressly overruled by *Pryor v. Lee C. Moore, Corporation,* 262 F2d 673 (10th Cir 1959).

■ The state of the present law is "with near unanimity, that prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of whether a defect in the product made it unsafe for its intended use and proximately caused the harm." 4 Will L J 394, 395 (1967).

In *International Derrick & Equipment Co. v. Croix*, 241 F2d 216 (5th Cir 1957), an oil derrick was manufactured and sold in 1945, used in Central America for three years, brought back to the United States and used for another four years before the gin pole on the derrick collapsed. During its use the derrick was constantly being erected, dismantled, moved and re-erected. There was testimony that the gin pole collapsed because during manufacture a leg of the pole had been improperly welded. A plaintiff's verdict was affirmed against the manufacturer.

In *Pryor v. Lee C. Moore, Corporation*, supra (262 F2d 673), the oil derrick had been in use for 15 years when it collapsed. Again, there was evidence that the collapse was caused by defective welding at the time of manufacture, and the court reversed an order directing a verdict for the defendant.

The defendant relies on two New Jersey cases in which the court held that failure of the product was due to its age and long use and, therefore, the manufacturer was not liable. We interpret those cases as holding that the manufacturer cannot be held for a failure of his product when there is no proof of a manufacturing defect. In *Jakubowski v. Minnesota Mining and Manufacturing*, 42 NJ 177, 199 A2d 826 (1964), a used sanding disc broke up during subsequent operation. The dissenters believed expert testimony that the disc would not break unless it was defective was

sufficient proof of defective manufacture; the majority believed it was not. In *Courtois v. General Motors Corp.*, 37 NJ 525, 182 A2d 545 (1962), no evidence was introduced to prove that defective manufacturing was responsible for the breaking of all the lugs holding a tractor wheel.

Despite the age and long use of the crane in this case, the inquiry is the same as in other products liability cases—was the product defectively manufactured and was the defect the cause of injury?

The disagreement between the parties upon these issues is caused by their difference in interpreting the testimony of the expert, Mr. Czyzewski, called by the plaintiff. He conducted various kinds of examinations of the boom shortly after the tragedy. After being asked a hypothetical question, he testified:

"A Under those circumstances it would be the defects in the weld that would cause the boom to collapse.

"Q All right. And did these, in your examination, appear to be the original welds of manufacture?

"A Yes, that's the conclusion I came to, that they were the original welds. * * *."

Mr. Czyzewski's testimony was that the welds were not properly fused and were of insufficient length. This permitted more oxidation (rusting) than would otherwise have occurred. This excessive oxidation slowly weakened the connection between the legs and struts of the boom, and this weakening had progressed so far that in 1965 when a load was lifted the boom collapsed.

Mr. Czyzewski's opinions were attacked upon cross-examination and by the experts called by de-

fendant, and as a result, the weight of some of his testimony was lessened. Nevertheless, his testimony is sufficient to support the trial court's finding that the defendant manufactured a defective product and the defect caused plaintiff's damage. In this case such findings establish a case of strict liability.

Affirmed.

McALLISTER, J., dissents.