Filed 10/5/20

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| KEVIN SHIPP et al., | C087371 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201500183347CUPAGDS ) |
| v. | |
| WESTERN ENGINEERING, INC. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed with directions.

Mastagni Holstedt, A.P.C., David P. Mastagni and Grant A. Winter for Plaintiffs and Appellants.

Mark A. Goodman and Joseph A. Hearst for Defendants and Respondents.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Parts III – V of the Discussion.

1

This case presents the question of whether a highway contractor controlling traffic on a public highway owes a duty of care to a motorist who was rear-ended when forced to stop behind a vehicle that was unable to turn left at an intersection that was blocked by stopped traffic controlled by the contractor. We conclude that the contractor here did indeed owe a duty of care.

Defendants were performing construction work on Latrobe Road in El Dorado County. They had implemented a "reversing lane closure" traffic control, reducing traffic to one lane. Traffic going in one direction would be stopped, traffic going in the other direction would be allowed to proceed, and then the procedure would be reversed. A flagger to control northbound traffic was positioned at the south end of the reversing lane closure on Latrobe Road, north of where it intersected with Ryan Ranch Road. Because the flagger was positioned north of the intersection, when the flagger stopped northbound traffic, that traffic could back up, extending south into the intersection.

Plaintiff Kevin Shipp (individually, plaintiff) was driving south on Latrobe Road when he came to a stop behind two other vehicles. The vehicle two cars ahead of plaintiff was attempting to turn left onto Ryan Ranch Road, but it could not do so because northbound traffic, stopped by the flagger at the south end of the reversing lane closure, was stopped in the intersection. Seconds after plaintiff stopped, a vehicle driven by George Smithson rear-ended plaintiff's vehicle.

Plaintiff and his wife (collectively plaintiffs) commenced an action against defendants, including defendant Western Engineering Contractors, Inc. (Western) and certain Western employees.[1] Plaintiffs asserted causes of action sounding in negligence and loss of consortium. The trial court granted defendants' motion for summary judgment, concluding that plaintiffs could not establish duty, breach, or causation to

---

[1] Plaintiffs reached a settlement with Smithson, the driver of the car that rear-ended plaintiff's vehicle.

support the negligence cause of action, and that, because the negligence claim failed, so too did the loss of consortium claim.

On appeal, plaintiffs assert the trial court erred in granting defendants' motion for summary judgment. Plaintiffs assert triable issues of fact remained as to duty, breach, and causation, and that both causes of action are viable.

We reverse.

In the published part of this opinion, we conclude that the evidence before the trial court supports the existence of a duty of care. In the unpublished part, we conclude that defendants failed to eliminate all triable issues of fact as to breach and causation. We further conclude that, because the negligence cause of action remains viable, so too does the loss of consortium cause of action.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### Undisputed Facts

On August 23, 2013, Western was performing road work on Latrobe Road north of where it intersected with Ryan Ranch Road. Latrobe Road runs north and south. Western had a "reversing lane closure" traffic control in place in the area of the construction site. In this type of traffic control, traffic traveling in one direction would be stopped while traffic traveling in the other direction passed through the single lane in use. The flagger at the south end of the reversing lane closure controlling northbound traffic was located just north of the intersection at Ryan Ranch Road.

At some undefined point north of Ryan Ranch Road, Latrobe Road curves to the west. Plaintiff was north of the intersection, driving south on Latrobe Road. Smithson was behind plaintiff, also driving southbound on Latrobe Road.

---

[2] Plaintiffs also assert that the trial court made erroneous evidentiary rulings. In light of our determination, we need not reach these contentions.

As plaintiff entered the construction zone, southbound traffic moved into the single lane. Northbound traffic was stopped so that southbound traffic could proceed. Plaintiff recalled seeing traffic controls for both northbound and southbound traffic, but he could not recall the type of traffic controls. Plaintiff drove through the construction zone without issue.

At some point, plaintiff came to a stop behind a car. That car, in turn, was stopped behind another vehicle that was waiting to turn left onto Ryan Ranch Road. Plaintiff believed "that the car in front of the car in front of him was waiting for an opportunity to either get through a couple of stopped cars or for traffic to clear."

Plaintiff was stopped for approximately five seconds before the collision. He saw Smithson's vehicle behind him, perhaps less than one second prior to impact. Smithson, who testified he was traveling at approximately 35 miles per hour, hit plaintiff's vehicle from behind, and plaintiff's vehicle was pushed into the vehicle in front of his.

Traffic was light as Smithson had proceeded through the construction zone. Smithson testified that at some time before the collision, he "must have looked off to the side," because he did not see plaintiff's vehicle before hitting it. When Smithson saw plaintiff's car, he slammed on the brakes, and then collided into plaintiff's car. Smithson recalled telling an investigating officer that he never saw plaintiff's vehicle or traffic stopped before the collision.

Smithson believed that the primary reason the accident happened was that he was not paying attention and he knew of no other cause of the accident. However, he also testified that he did not know if there were cars stopped in and blocking the intersection at Ryan Ranch Road.

Defendant Don J. Carroll, president of Western, stated that, on a roadway project the safety of motorists is an "obligation of the highest concern." Defendant Tom Jacques was a Western employee whose duties included overseeing traffic control operations on Western job sites. According to Jacques, "[a]ny time you do a station -- flagger station

4

like that, you want to consider the travel public [*sic*] and to provide them with some *safe room to stop in their vehicles away from an intersection*." (Italics added.) However, in deciding where to place the northbound flagger station on Latrobe Road, Jacques did not consider the fact that, if cars were stopped at the northbound flagger station and backed up into the intersection, southbound cars could not turn left onto Ryan Ranch Road. Indeed, Jacques admitted Western took no action to avoid "gridlocking" in the intersection of Latrobe Road and Ryan Ranch Road.

Defendants provided no testimony indicating the flagger at the south end of the reversing lane closure communicated with the flagger at the north end about blockages in the intersection impeding southbound traffic turning onto Ryan Ranch Road, or about stopped traffic in general, so that the north-end flagger could warn or stop southbound traffic.

Western's contract with El Dorado County required that Western take public safety into consideration when doing work on the Latrobe Road project.

### The Complaint

Plaintiffs asserted causes of action sounding in negligence and loss of consortium. In the first cause of action, plaintiffs asserted defendants were negligent in, among other things, their lane closures, traffic controls, advance traffic slowing, and other work. Specifically, plaintiffs asserted that defendants negligently created a condition where traffic was "dangerously backed up in a manner that was a substantial cause of the collision . . . ." Plaintiffs further asserted that defendants "so negligently designed, planned, and implemented the placement of the traffic control stop for the lane of traffic in the direction traveling northbound on Latrobe Road, that traffic traveling southbound on Latrobe Road was unable to make a left turn onto Ryan Ranch Road due to backed up cars stopped in the northbound lanes." Plaintiffs asserted that defendants' actions were a substantial cause of the collision and the injuries sustained by plaintiffs, and that it was foreseeable that people driving on Latrobe Road near this intersection would be injured.

5

In the second cause of action, to recover damages for loss of consortium, plaintiffs asserted that plaintiff's wife had been deprived of her husband's services.

## Defendants' Summary Judgment Motion

Defendants moved for summary judgment. They asserted that, immediately prior to the collision, plaintiff and Smithson had both driven through the construction zone without incident. According to defendants, Smithson acknowledged in his deposition testimony that he struck plaintiff's vehicle "due to inattentiveness, and not because of anything that distracted him as he was driving through the construction zone." Defendants further stated that Smithson acknowledged there "wasn't anything related to any construction work that he feels contributed to his running into the back of [plaintiff's] vehicle."

Defendants asserted that plaintiff was unable to prove that the "temporarily blocked intersection had anything to do with the accident, which occurred 10 feet north of the intersection" and at a time when plaintiff's vehicle was stopped behind two other vehicles. Defendants further asserted that plaintiff could not "establish that if the intersection had been clear, the car that was two cars in front of him would have been able to make its left turn without stopping at the 'T' intersection" or that Smithson's vehicle would not have collided with plaintiff's vehicle. Defendants maintained that such contentions would be conjectural.

Defendants argued that no duty of care extended from them to plaintiff and that defendants' actions were not a substantial factor in the accident. Defendants maintained that they did not create any hazard that caused the collision. They further asserted that the "undisputed facts establish that the . . . Defendants' conduct in performing the construction work near the location of the subject accident was in conformity with the general duty of care owed to motorists to perform their work without creating a dangerous condition on the roadway." According to defendants, Smithson's inattentiveness was the sole proximate cause of plaintiff's injuries.

Defendants further asserted that, even if they were negligent in some way, Smithson still would have rear-ended plaintiff's vehicle, as Smithson admitted that he was inattentive and did not see plaintiff's vehicle before the collision. According to defendants, had Smithson been looking where he was going, he would have seen plaintiff's vehicle and could have avoided any collision by safely stopping his car behind plaintiff's. Defendants asserted that, even if they had a duty to keep the intersection clear, plaintiffs could not establish that the failure to do so was a substantial factor in causing Smithson's vehicle to collide with plaintiff's vehicle.

Defendants also asserted negligence per se did not apply because plaintiffs could not identify any statute or regulation requiring them to keep the intersection clear of vehicles. Even if such a statute or regulation could be identified, defendants further asserted that plaintiffs could not establish the presence of vehicles in the intersection had any role in causing Smithson to rear-end plaintiff. Defendants asserted that it was not the custom or practice of construction contractors to keep intersections clear of traffic when performing roadwork.

With regard to the second cause of action, defendants asserted that, because plaintiffs' negligence cause of action failed, the loss of consortium cause of action must also fail.

**Plaintiffs' Opposition**

In opposing defendants' summary judgment motion, plaintiffs asserted that a road construction contractor owes a duty of care to keep the roadway safe for the motoring public. Additionally, plaintiffs emphasized testimony of defendants' employees that a duty of safety to the motoring public is the foremost concern on a road construction project.

Plaintiffs also asserted that there remained triable issues of fact as to whether defendants' traffic controls were a substantial factor in causing the collision and plaintiff's injuries. According to plaintiffs, the evidence demonstrated that defendants

7

were aware of the risks of placing the flagger stations at the beginning of the construction site, and that, as a result of foreseeable risks, plaintiff sustained injuries. Specifically, plaintiffs asserted that defendants were aware of the danger of blocking the intersection at Ryan Ranch Road, and they did so anyway, resulting in plaintiff's injuries.

Plaintiffs submitted the declaration of Laurence H. Neuman, a consulting civil and traffic engineer. Neuman opined that, "[h]ad the flagger station been located south of the intersection of Ryan Ranch Road[,] traffic could have queued to the south of the intersection and not blocked northbound [*sic*][3] traffic from being able to turn left into Ryan Ranch Road. This would allow southbound left turning vehicles get [*sic*] safely and quickly out of roadway [*sic*] clearing the road for traffic approaching around the downhill curve." Neuman stated that the "placement of the flagger stations north of the intersection of Ryan Ranch Road . . . increased the risk of a southbound left turning vehicle being unable to turn onto Ryan Ranch Road, and thereby increased the risk to the southbound motoring public, including" plaintiff.

### Tentative Ruling

The trial court tentatively granted defendants' motion for summary judgment. According to the trial court, defendants "did not place [plaintiff] in a position to be rear ended by Smithson, since the undisputed facts reflect that the accident had nothing to do with Western's construction work." The court reasoned: "[b]oth plaintiff and Smithson were travelling southbound on Latrobe Road, regardless of the presence or absence of the construction work. Smithson admits that he was not distracted by the construction zone, and nothing relating to the construction zone contributed to his rear ending plaintiff. He

---

[3] It appears the reference to "northbound" was a mistake. Only traffic travelling southbound on Latrobe Road could make a left turn onto Ryan Ranch Road and it was the northbound traffic that caused the congestion in the intersection that caused the southbound traffic to stop.

was merely inattentive when he ran into the back of plaintiff's vehicle." The trial court ruled that negligence per se was inapplicable because plaintiffs failed to cite any statute or regulation that defendants allegedly violated. Without elaboration, the trial court found that "[n]either duty nor breach of duty have been shown here . . . ." The court further found, again without elaboration, "nor was the cause of plaintiff's injuries any breach of duty by moving parties defendant[s]." Thus, the trial court tentatively ruled that defendants met their initial burden on their summary judgment motion, and, in opposition, plaintiffs failed to raise a triable issue of material fact. The trial court also tentatively ruled that, because it intended to grant defendants summary judgment on the negligence cause of action, the loss of consortium cause of action, too, must fail.

## Oral Argument in the Trial Court

Plaintiffs argued that plaintiff's injuries were foreseeable and closely connected to defendants' negligent act in the manner in which they set up traffic controls. Plaintiffs cited Carroll's testimony that safety is always a consideration when setting up a lane closure. Plaintiffs also cited Jacques's testimony that, when a flagger station is employed, "you want to consider the public and provide them with sufficient room to stop their vehicles away from an intersection."

Plaintiffs emphasized the general rule that everyone owes a duty to exercise ordinary care. Quoting from *Bryant v. Glastetter* (1995) 32 Cal.App.4th 770 (*Bryant*), a case upon which defendants relied, plaintiffs asserted that this was not a case in which defendants' negligence "was foreign to the injury" sustained by plaintiff. Instead, according to plaintiffs, "the entire purpose of setting up traffic controls is to avoid collisions involving cars traveling within a traffic control area." Plaintiffs asserted that the foreseeable risk of negligently performing traffic controls is that the cars within the traffic control zone will collide with one another, which is what occurred here.

Asked by the trial court what the specific negligent act was, plaintiffs responded that defendants were negligent in setting up the flagger station north of Ryan Ranch Road

9

so that, when cars stopped by the flagger backed up to the south, they blocked the intersection. Plaintiffs also emphasized that Jacques, charged with setting up the traffic control zone and flagger stations, failed to consider whether cars would back up into the intersection, preventing southbound cars from being able to turn left onto Ryan Ranch Road.

Plaintiffs asserted that these facts and circumstances demonstrated the breach of a duty of care, or, at the least, sufficed to raise a triable issue of material fact on these points.

Turning to causation, plaintiffs asserted that, in his deposition, plaintiff testified that, if there had not been a line of northbound vehicles backed up at the flagger station, "then the car that was two ahead of him would have been able to make a timely left turn, and he would not have been stopped in the road." Plaintiffs acknowledged that Smithson was negligent, too. However, according to plaintiffs, "the reason [Smithson] collided into [plaintiff] is irrelevant, and it really doesn't impact the analysis of whether or not the construction company was also a substantial factor in causing the accident."

Defendants asserted that, while plaintiffs argued that the sole purpose for setting up traffic controls is to prevent collisions, they failed to cite any authority for this proposition. Defendants went a step further, arguing that plaintiffs' assertion was not true.

Defendants emphasized that Smithson rear-ended plaintiff because Smithson was not paying attention and the evidence demonstrated that there was no activity being conducted by defendants that distracted Smithson at the time. Defendants further asserted that no regulation required a construction contractor to keep intersections clear during roadwork, and it was not the custom and practice of the road construction industry to do so.

10

**Order and Judgment**

After oral argument, the trial court essentially adopted its tentative ruling and granted defendants' motion for summary judgment.  Thereafter, the court filed its judgment in favor of defendants.

**DISCUSSION**

**I.  Summary Judgment and Negligence**

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citations.]  '[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.'  [Citation.]  If a defendant shows that one or more elements of a cause of action cannot be established or that there is a complete defense to that cause of action, the burden shifts to the plaintiff to show that a triable issue exists as to one or more material facts.  [Citations.]  If the trial court finds that no triable issue of fact exists, it then has the duty to determine the issue of law." (*Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 553 (*Jimenez*); see Code Civ. Proc., § 437c.)  "We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence." (*Sakai v. Massco Investments, LLC* (2018) 20 Cal.App.5th 1178, 1183 (*Sakai*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

"On appeal, we review the trial court's decision de novo.  [Citation.]  We independently review the papers supporting and opposing the motion, considering all the evidence offered in connection with the motion and any inferences that the evidence reasonably supports, applying the same rules and standards as the trial court.  [Citation.]  We view the evidence in the light most favorable to plaintiffs as the losing parties.  [Citation.]  In liberally construing the evidence in favor of the party opposing the motion, we resolve all doubts concerning the evidence in favor of the opponent." (*Jimenez,*

11

*supra*, 237 Cal.App.4th at pp. 553-554; see Code Civ. Proc., § 437c.) On the other hand, "[d]eclarations of the moving party are strictly construed . . . ." (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1024 (*Raven H.*).) Ultimately, "doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party." (*Ibid*.)

To support a negligence cause of action, a plaintiff must plead and prove: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

## II. Duty

### A. Plaintiffs' Contentions

Plaintiffs assert the evidence shows defendants had a duty to avoid causing harm to motorists, including plaintiff. Plaintiffs emphasize case law establishing that a road construction contractor owes a duty to the public to keep the road safe. They assert that this is true as a matter of law.

### B. Analysis

#### 1. Duty of Care Generally

" '[T]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.' " (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 837, quoting *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 (*Bily*).) " 'Duty is a question of law for the court.' " (*Kesner v Superior Court* (2016) 1 Cal.5th 1132, 1142 (*Kesner*).) It is " 'to be determined on a case-by-case basis.' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 534, quoting *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.)

" 'A duty may arise through statute, contract, or the relationship of the parties.' " (*Lichtman v. Siemens Industry, Inc.* (2017) 16 Cal.App.5th 914, 920 (*Lichtman*), fn.

12

omitted.)  Additionally, " 'California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.  [Citation.]' [Citation.]  Civil Code section 1714, subdivision (a) provides in relevant part:  'Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.' "  (*Kesner, supra,* 1 Cal.5th at pp. 1142-1143.)  While the question of duty is to be decided on a case-by-case basis, every case is governed by the general rule that " 'all persons are required to use ordinary care to prevent others from being injured as the result of their conduct.' "  (*Sakai, supra*, 20 Cal.App.5th at p. 1184, quoting *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 & citing *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 (*Cabral*).)  "Unless there is a statutory exception to the general rule of duty, courts fashion one only 'where "clearly supported by public policy." ' "  (*Lichtman*, at p. 921.)  " ' "Courts . . . invoke[] the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act . . . .' " ' "  (*Kesner*, at p. 1143, quoting *Bily, supra*, 3 Cal.4th at p. 397.)  "The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for all the harms that result."  (*Kesner*, at p. 1143.)

"[D]uty differs from the other elements of a tort.  Breach, injury, and causation must be demonstrated on the basis of facts adduced at trial, and a jury's determination of each must take into account the particular context in which any act or injury occurred.  Analysis of duty occurs at a higher level of generality."  (*Kesner, supra*, 1 Cal.5th at p. 1144.)

13

## 2.  Duty Imposed on a Highway Contractor

Defendants asserted in the trial court that no regulation required a highway construction contractor to keep intersections clear during roadwork, and it was not the custom and practice of the road construction industry to do so.  We conclude, however, under the circumstances here that defendants owed plaintiff a duty of care based on the general duty owed by a highway contractor to the public.

" ' "A highway contractor doing work on a public highway or street owes to the traveling public the duty of protecting it from injury that may result from [the contractor's] negligence.  [The contractor] is under a duty, for instance, to warn travelers of existing hazards during the construction period by the placing of lights, guards, warning signs, and barriers . . . ." [Citation.]' [Citations.]  . . .  [T]his duty applies even when the contractor has performed [the] work properly and the hazard is created by conditions immediately adjacent to the roadway upon which the contractor worked.  [Citation.]  . . .  'The contractor's responsibility [is] not limited to dangerous conditions within the scope of [the contractor's] own work while [the contractor] [is] in control of the job site.  [The contractor] [is] under a duty to protect the public against dangerous conditions existing where the public in rightful use of the roadway might encounter such conditions.' " (*Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120, 1134 (*Ray*), citing *Thirion v. Fredrickson & Watson Construction Co.* (1961) 193 Cal.App.2d 299, 304-305 (*Thirion*) & quoting *Breslin v. Fredrickson* (1957) 152 Cal.App.2d 780, 786 (*Breslin*).)

Defendants, a highway contractor and its employees, were performing work on a public highway or street under a contract with El Dorado County.  Under Vehicle Code section 21367, they had the authority to control traffic, and motorists were legally

14

obligated to obey their directions.[4]  Defendants obviously may be liable for their negligence in performing such functions.  Indeed, as a highway contractor, defendants owed to the traveling public the duty of protecting it from injury that may result from their negligence, and a duty to protect the public against dangerous conditions existing where the public in rightful use of the roadway might encounter such conditions.  (*Ray, supra*, 98 Cal.App.4th at p. 1134; *Thirion, supra*, 193 Cal.App.2d at pp. 304-305; *Breslin, supra*, 152 Cal.App.2d at p. 786.)  This conclusion is consistent with the testimony of Carroll, Western's president, who testified that, on a roadway project, safety of motorists is an "obligation of the highest concern."

Defendants seek to distinguish *Ray* and *Thirion* on two bases.  First, they assert that those cases "involved contractors that created a dangerous condition *in or immediately adjacent to their work areas*."  Plaintiffs dispute whether defendants' characterization of these cases is correct.  Further, while defendants assert that the accident occurred outside of Western's work zone, plaintiffs maintain that the accident occurred in an area under defendants' traffic controls.

Whether the accident occurred within what defendant would define as the construction zone is not the relevant question.  Here, the collision took place within

---

[4]  Vehicle Code section 21367, subdivision (a) provides in pertinent part:  "[P]ersons contracting to perform construction, maintenance, or repair of a highway, may, with the approval of the department or local authority, as the case may be, and while engaged in the performance of that work, restrict the use of, and regulate the movement of traffic through or around, the affected area whenever the traffic would endanger the safety of workers or the work would interfere with or endanger the movement of traffic through the area.  Traffic may be regulated by warning signs, lights, appropriate control devices, *or by a person or persons controlling and directing the flow of traffic*.  [¶]  (b)  It is unlawful to disobey the instructions of a person controlling and directing traffic pursuant to subdivision (a).  [¶]  (c)  It is unlawful to fail to comply with the directions of warning signs, lights, or other control devices provided for the regulation of traffic pursuant to subdivision (a)."  (Italics added.)

15

defendants' reversing lane closure, just north of the intersection where defendants' operation caused a traffic backup in the intersection at Ryan Ranch Road. Construing the evidence liberally as we must (*Jimenez, supra*, 237 Cal.App.4th at p. 554), this was, at the very least, "immediately adjacent to the roadway upon which the contractor worked." (*Ray, supra*, 98 Cal.App.4th at p. 1134.) Indeed, counsel for defendants conceded at oral argument the accident occurred "adjacent to the construction zone."

Second, defendants seek to distinguish *Ray* and *Thirion* on the basis that, in those cases, "there was no intervening negligence by a third party that attenuated the connection between the defendant's alleged negligent conduct and the injury suffered, as there was in this case." We take this point up in our consideration of causation in an unpublished portion of the opinion *post*, where we conclude there is a triable issue of fact as to whether defendants' breach of duty was a substantial factor in plaintiffs' injuries. Suffice it to say here that nothing in *Ray* or *Thirion* exculpates a contractor from liability in this situation. To the contrary, here, defendants had a duty to protect the traveling public and to not create a dangerous condition, regardless of the direct cause of a plaintiff's injuries. Further, giving liberal construction to the evidence before us (*Jimenez, supra*, 237 Cal.App.4th at p. 554), we conclude that, under the circumstances, the traffic congestion caused by defendants was a dangerous condition. And as we shall discuss, the fact that a third party's negligence was also a cause of plaintiffs' injuries does not excuse defendants from their duty of care.

### 3. *Rowland* Factors

Our high court has identified several policy considerations for courts to consider in determining whether an exception should be made to the general duty of care in Civil Code section 1714, subdivision (a): (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the

16

burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved. (*Kesner, supra*, 1 Cal.5th at p. 1143, citing *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*).) We shall consider these policy considerations in the context of determining whether defendant highway contractors here owed plaintiffs a duty.

### a. Foreseeability

While foreseeability is the most important factor, " 'the court's task in determining duty "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather *to evaluate more generally whether the category of negligent conduct at issue* is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . ." ' " (*Kesner, supra*, 1 Cal.5th at p. 1145, some italics added; *Cabral, supra*, 51 Cal.4th at p. 772; *Sakai, supra*, 20 Cal.App.5th at pp. 1184-1185; *Bryant, supra*, 32 Cal.App.4th at p. 780.) Foreseeability, in the context of duty, " ' "is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." . . . [I]t is settled that what is required to be foreseeable is the general character of the event or harm . . . .' " (*Kesner*, at p. 1145.) We conclude that defendants' conduct here was sufficiently likely to result in the harm experienced by plaintiffs.

Our high court has recognized the commonly known fact that inattentive drivers sometimes cause collisions. In *Cabral*, a truck driver working for the defendant parked his tractor-trailer alongside the freeway to have a snack. The plaintiff's husband, driving a pickup truck, left the road, possibly because he was asleep or lost control, collided with the rear of the tractor-trailer, and died as a result of the collision. The issue was whether the tractor-trailer driver and his company had a duty of care to the decedent not to park

where a motorist leaving the road could collide with the tractor-trailer. (*Cabral, supra*, 51 Cal.4th at p. 768.)

As to foreseeability, the *Cabral* court wrote: "In the generalized sense of foreseeability pertinent to the duty question, that a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants, is clearly foreseeable. Drivers are supposed to control their vehicles and keep them on the traveled roadway, but common experience shows they do not always do so. Freeway drivers may be intoxicated, *distracted*, blinded by the weather or sun, sleepy or sick, and for any of these reasons or others may drive off the roadway . . . . If they do so at freeway speeds and collide with another vehicle parked alongside the road, they are likely to be injured or injure other occupants of the vehicles, or both." (*Cabral, supra*, 51 Cal.4th at p. 775, italics added.)

Thus, the *Cabral* court concluded that the possibility a driver might leave a freeway for the shoulder area where they might collide with any obstacle placed there is "not categorically unforeseeable." (*Cabral, supra*, 51 Cal.4th at p. 768.) Here, we apply that same reasoning. The collision here was at least as foreseeable as the one in *Cabral*. That drivers, like Smithson, might become distracted and rear-end cars stopped at the intersection congested by defendants' negligence is "not categorically unforeseeable." (*Ibid*.) Such an event was " ' "likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it" ' " in stationing the flag stations. (*Kesner, supra*, 1 Cal.5th at p. 1145.)

In *Sakai, supra*, 20 Cal.App.5th 1178, a case involving third party negligence, the court found the third party's conduct was foreseeable. There, the plaintiff sued the owner of a gas station who had allowed the parking lot to be used by a food truck. The parking lot was crowded by patrons obtaining food. In a road rage incident related to plaintiff hitting the third party's vehicle while trying to back out of the parking lot, the third party intentionally struck plaintiff with his vehicle and dragged him some distance. (*Id*. at

18

pp. 1181-1182.) Plaintiff alleged that his injuries were caused by lack of parking, the failure to designate the parking area for the food truck, and the lack of parking attendants or security personnel to direct traffic. (*Id*. at p. 1182.) Defendant moved for summary judgment. (*Ibid*.) The trial court granted the motion, reasoning that there was " 'no foreseeability and no duty.' " (*Id*. at p. 1183.) While the *Sakai* court ultimately concluded there was no duty for a reason we discuss *post*, the court nevertheless concluded the general type of injury the plaintiff sustained was foreseeable. (*Id*. at p. 1185.) Considering the *Rowland* foreseeability factor, the *Sakai* court wrote: "The general type of injury that [the plaintiff] suffered was foreseeable—that is, it is foreseeable that a customer of the food truck might be struck by a car exiting the parking lot in an imprudent manner." (*Ibid*.) Likewise, in the instant case, we conclude the general type of injury plaintiff suffered was also foreseeable. The collision here was at least as foreseeable as what occurred in *Sakai*. It was foreseeable that plaintiff, required to stop by traffic congestion caused by defendants' negligently placed traffic controls, might be rear-ended by a motorist driving in an imprudent manner.

The trial court found *Bryant, supra*, 32 Cal.App.4th 770, persuasive and defendants rely heavily on that case here as analogous in arguing plaintiff's injuries were unforeseeable. We disagree. *Bryant* is inapposite and has nothing to do with a highway construction contractor's duty to the motoring public. And in our view, the collision here was far more foreseeable, and far less attenuated from defendants' conduct, than in *Bryant*.

In *Bryant*, police officers pulled the defendant over and arrested her for driving under the influence. (*Bryant, supra*, 32 Cal.App.4th at p. 774.) The police officers then contacted the decedent, a tow truck driver, to tow away the defendant's vehicle. (*Ibid*.) As the decedent was working on the side of the road to remove the defendant's vehicle, he was struck by another vehicle and killed. (*Ibid*.) The decedent's survivors filed a wrongful death action against, among others, the defendant. (*Id*. at p. 775.) The court in

*Bryant* determined that, "under the circumstances presented," the defendant did not owe a duty to the decedent to protect against the type of harm that befell him. (*Id*. at p. 783.)

The *Bryant* court recognized that the concept of duty is " ' " ' "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' " ' " (*Bryant*, *supra*, 32 Cal.App.4th at p. 778.) Defendants would have us focus only on the *Bryant* court's foreseeability analysis, but that court's decision turned on three *Rowland* factors. (*Bryant*, at pp. 778-783.)

The *Bryant* court first concluded that, as alleged in the complaint, defendant owed a duty to not drive under the influence. (*Bryant*, *supra*, 32 Cal.App.4th at pp. 775, 779.) However, focusing on that categorical negligent conduct of defendant, the court concluded her duty did not extend to the harm sustained by the decedent. It was not reasonably foreseeable that, as a result of the category of negligent conduct involved— driving under the influence—a tow truck driver responding to a call to remove the driver's vehicle from the roadway would be struck and killed by a third party. (*Id*. at p. 780.) The *Bryant* court reasoned, "[t]he harm suffered by decedent . . . was not a 'harm of a kind normally to be expected.' " (*Id*. at p. 779.) Rather, the expected consequences of driving under the influence might include a collision or narrowly averted collision involving the defendant. (*Ibid*.)

The *Bryant* court continued: "Even without being intoxicated, … [the defendant] might well have ended up by the side of the road and in need of a tow truck for any number of reasons which might have involved varying degrees of negligence. Other than making it more probable that decedent would be in the place in which the accident happened, [the defendant's] consumption of alcohol did not make more probable the accident that occurred, which was the result of independent negligence by a third party. 'The foreseeability of a particular kind of harm plays a very significant role in this calculus . . . , *but a court's task—in determining "duty"—is not to decide whether a*

20

*particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party*.' [Citation.] Thus, while [the defendant] might have foreseen that her consumption of alcohol would result in her being stopped by the side of the road, *as a matter of policy* we decline to hold that [the defendant] should have foreseen that her consumption of alcohol would result in the harm actually suffered by decedent." (*Bryant*, *supra*, 32 Cal.App.4th at pp. 779-780, italics added.) The court concluded that the category of negligent conduct at issue there was not sufficiently likely to result in the kind of harm sustained by the decedent so as to impose liability on the defendant. (*Ibid*.)

The *Bryant* court then went on to consider another *Rowland factor*—the closeness of the connection between the defendant's conduct and the harm to the decedent. The court noted that there was no logical cause and effect relationship between the defendant's negligence in driving under the influence and the harm the decedent suffered. (*Bryant, supra*, 32 Cal.App.4th at p. 782.) It further observed defendant was not even directly responsible for having brought the decedent to the place where he was injured. (*Ibid*.) It then stated: "[w]e decline to hold that an intoxicated driver is, *as a matter of policy*, liable for all subsequent harm regardless of intervening acts by third parties, and we conclude that this factor also militates against a finding of duty . . . ." (*Ibid*., italics added.)

Lastly, the *Bryant* court considered the *Rowland* factor related to the consequences to the community of imposing a duty and reasoned that, while the defendant owed a duty to the decedent and all others not to drive under the influence, the defendant owed no duty to avoid situations in which she might need a tow truck driver's services. (*Bryant, supra*, 32 Cal.App.4th at p. 782.) The court explained: "If we decide here that [the defendant's] initial negligence expands her liability beyond its usual scope to include

harm resulting from the fact that [she] needed decedent's services, we will be establishing a rule which requires that a court examine the culpability of a defendant in needing the help of a tow truck in order to determine whether there is liability for subsequent harm to the driver. Thus, for example, if [the defendant] had suffered a mechanical breakdown or had run out of gas we would have to look at whether and to what extent she had been negligent in creating the initial problem before we could evaluate the extent of her liability. [¶] *As a matter of policy* we do not think it is wise to create an incentive for drivers whose cars are disabled to attempt self-help solutions rather than to call for assistance. . . . [T]here is the countervailing interest in encouraging drivers to obtain the help they need. We find that latter interest would be best served by finding no duty in the present case." (*Id*. at pp. 782-783, italics added.)

Here, the policy analysis is very different from that in *Bryant*. We perceive no countervailing policy reasons to the imposition of a duty. As for foreseeability, we note the well-settled requirement in *Bryant* instructing courts, in determining whether a duty exists, to evaluate more generally whether the *category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced* such that liability may appropriately be imposed on the negligent party. (*Bryant*, *supra*, 32 Cal.App.4th at pp. 779-780.) Here, the general category of negligent conduct at issue—negligence in controlling the traffic—was sufficiently likely to result in the kind of harm experienced by plaintiff. As we have said, it was reasonably foreseeable that a motorist in plaintiff's position would be rear-ended by an inattentive driver after having been forced to stop in the roadway because southbound vehicles were unable to turn left as a result of defendants' negligently placed traffic controls.

Defendants reprise an argument made in the trial court, which the court apparently found persuasive. They contend that, "[j]ust as the court in *Bryant* concluded that the defendant might have been stopped on the side of the road and in need of a tow truck for any number of reasons aside from her intoxication, [plaintiff] might have had to slow or

stop to allow cars ahead of him to turn left onto Ryan Ranch Road regardless of any action or inaction by" defendants.

Defendants' argument is seriously flawed. The *Bryant* court first determined that the defendant had a duty—to not drive under the influence of alcohol and expose other motorists to related harm. The court then held that duty did not extend to the circumstances giving rise to decedent's injury given that the injury did not result from that general category of negligence. (*Bryant*, *supra*, 32 Cal.App.4th at p. 782.) The hypothetical posed by the *Bryant* court related to innocent conduct for which the defendant had no duty to the decedent, not to a situation where the defendant had not engaged in any conduct whatsoever. Consequently, the *Bryant* court's hypothetical provides no analogue here. In the context of this case, whether plaintiff could have hypothetically been injured in the same way if defendants had not been negligent is not pertinent to our duty analysis, although such a question is relevant to causation, discussed *post* in the unpublished portion of this opinion. Instead, we must look to the facts presented and determine generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced such that liability may appropriately be imposed on the negligent party. (*Id*. at pp. 779-780.) Plaintiffs' injuries here did extend from defendants' negligence.

Additionally, we note that the *Bryant* court's reasoning concerning innocent reasons why the defendant may have needed a tow truck related to that court's discussion about the *Rowland* factor concerning consequences to the community of imposing a duty, not foreseeability. We discuss that factor *post*, but, for now, we emphasize that the *Bryant* court, in considering each of the three *Rowland* factors it discussed, refused to extend a duty "*as a matter of policy*." (*Bryant*, *supra*, 32 Cal.App.4th at pp. 781, 782, italics added.) The policy considerations, including foreseeability, are different here.

We conclude that the foreseeability consideration cuts in favor of concluding defendants owed plaintiff a duty of care.

23

### b. Degree of Certainty Plaintiff Suffered Injury

It is not disputed that plaintiff suffered injuries when Smithson rear-ended his vehicle.  The injuries are certain and compensable.  This factor supports the conclusion that defendants owed plaintiff a duty of care.

### c. Closeness of the Connection Between Defendants' Conduct and the Injury Suffered

This factor is " 'strongly related to the question of foreseeability' " and " 'accounts for third party or other intervening conduct.' " (*Sakai*, *supra*, 20 Cal.App.5th at p. 1185.) " 'Where the third party's intervening conduct is *foreseeable or derivative* of the defendant's, then that conduct does not " 'diminish the closeness of the connection between defendant['s] conduct and plaintiff's injury.' " ' " (*Ibid.*, quoting *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1086, italics added.)

Defendants rely on *Bryant*, in major part because it involved third-party negligence.  But our high court in *Cabral* noted that *Bryant* "is best understood as resting on a lack of close connection between the defendant's conduct and the injury suffered." (*Cabral*, *supra*, 51 Cal.4th at p. 780.)  We acknowledge that the *Cabral* court went on to distinguish *Bryant* on the basis that no third-party negligence intervened in *Cabral*. (*Ibid*.)  But the *Cabral* court did not hold there could never be a duty of care where there was third-party negligence.  Indeed, the defendant was not solely at fault in *Cabral*; the plaintiff's own negligent driving was also a cause of the collision.  (*Id*. at p. 781.)  Moreover, subsequent to *Cabral*, our high noted:  " '[i]t is well established . . . that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person.'  [Citation.]  In determining whether one has a duty to prevent injury that is the result of third party conduct, the touchstone of the analysis is the foreseeability of that intervening conduct." (*Kesner, supra*, 1 Cal.5th at p. 1148.)

In *Sakai*, discussing the closeness of the connection between the defendant's conduct and the injury suffered, the court observed, " '[w]hen an injury is the product of the intervening act of a third person, the test is whether the particular manner in which the third person acted is one of the hazards that makes an actor negligent.' " (*Sakai*, 20 Cal.App.5th at p. 1185, italics omitted.) Thus, it was the closeness of the connection factor upon which the *Sakai* court concluded there was no duty in that case, reasoning that the third party's road rage conduct (as opposed to general imprudent conduct) was not "foreseeable or derivative of" the defendant's conduct in designing or operating the parking lot. (*Id*. at p. 1186.)

We are presented with a very different situation than in *Bryant* and *Sakai*. Defendants were responsible for the placement of the southern flagger north of the intersection at Ryan Ranch Road. It was Jacques who determined where traffic control devices were set up, and he acknowledged that, when establishing a flagger station, "you want to consider the travel public [*sic*] and to provide them with some safe room to stop in their vehicle away from an intersection." Thus, defendants caused the backup of northbound traffic in the intersection even though they knew it was imprudent. This, in turn, led to a southbound car being unable to turn left onto Ryan Ranch Road, causing cars to stop behind it, which is where plaintiff was situated when struck by Smithson. Unlike in *Bryant*, defendants were directly responsible for plaintiff being in the position where he was injured. (Cf. *Bryant, supra*, 32 Cal.App.4th at p. 782.) We conclude that plaintiff's injuries were both foreseeable and derivative of defendants' conduct. (*Sakai, supra*, 20 Cal.App.5th at p. 1186.)

*Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359 (*Pedeferri*), is an example of where the court found foreseeability and a close connection regarding a third party's negligence. There, a motorist who was in his vehicle on the side of the road was killed and a California Highway Patrol officer who was also there was partially paralyzed when a vehicle driven by a third party careened off the freeway into the motorist's

vehicle. (*Id.* at p. 363.) Ninety minutes before the collision, the third party left the defendant's motorsports dealership where the defendant's employees had loaded and strapped down two dirt bikes in the bed of the third party's truck. (*Ibid.*) The third party testified he was distracted when he felt and saw the bikes "hopping around" in the bed of the truck. While glancing over his shoulder, the third party steered his truck slightly to the right and into the motorist's vehicle. (*Ibid.*) The third party subsequently pleaded guilty to vehicular manslaughter while intoxicated and was sentenced to 15 years in state prison. (*Ibid.*) The officer, his wife, and the motorist's parents sued the third party driver for negligence, and subsequently added the motorsports dealership as a defendant. (*Id.* at p. 364.) The plaintiffs' accident reconstruction expert testified that the defendant's employees contributed to the accident by negligently loading and securing the bikes in the back of the third party's truck. (*Ibid.*)

The *Pedeferri* court addressed the first three factors of the *Rowland* analysis collectively under the category of foreseeability, including: " ' "[ (1) ] the [general] foreseeability of harm to the plaintiff, [ (2) ] the degree of certainty that the plaintiff suffered injury, [and] [ (3) ] the closeness of the connection between the defendant's conduct and the injury suffered . . . ." ' "[5] (*Pedeferri, supra,* 216 Cal.App.4th at pp. 366-367.) Similar to *Bryant* and several other cases we have cited, the *Pedeferri* court noted that, for purposes of these three factors, "our task is 'not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's

---

[5] The *Pedeferri* court divided the *Rowland* factors into two categories. (*Pedeferri, supra,* 216 Cal.App.4th at pp. 366-368.) As our high court has noted: " 'Three factors— foreseeability, certainty, and the connection between the plaintiff and the defendant— address the foreseeability of the relevan[t] injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief.' " (*Vasilenko, supra*, 3 Cal.5th at p. 1085, quoting *Kesner, supra*, 1 Cal.5th at p. 1145.)

conduct . . . .' [Citation.] Instead, we must 'evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' " (*Pedeferri*, at pp. 366-367, italics omitted.) The court then reasoned: "we can generally foresee that a vendor's negligence in loading or securing cargo could harm others on the roadway. It is foreseeable that cargo negligently loaded or secured in a vehicle could distract the vehicle's driver in a variety of ways—by making noise, blocking the driver's view, interfering with his or her control of the vehicle, or falling out. It is further foreseeable that a driver so distracted could injure others on or near the roadway." (*Id*. at p. 367.) Additionally, the court stated: "Th[e] chain of foreseeability is both short and direct. Accordingly, the ' "connection between [the vendor's] conduct and the injury suffered" ' by those alongside the road is not 'too attenuated.' " (*Ibid*.)

Likewise, here, we conclude that the chain of foreseeability is short and direct and further that the connection between defendants' conduct and the injury sustained by plaintiff was not too attenuated to find a duty.

### d. Moral Blame Attached to Defendant's Conduct

Jacques and Carroll both acknowledged the importance of safety in setting up traffic controls and placing flaggers. In deciding where to place the northbound flagger station, Jacques did not consider the fact that, if cars were stopped by the northbound flagger and backed up into the intersection, southbound cars could not make a left turn onto Ryan Ranch Road. Jacques also did not consider the fact that, north of Ryan Ranch Road, Latrobe Road curves to the west. Jacques acknowledged that Western did not do anything to prevent gridlock at the intersection, but he asserted that doing so was not Western's responsibility. Neither Jacques nor any other defense witness provided testimony indicating they did anything to warn southbound drivers to slow or prepare to stop because of the backup at Ryan Ranch Road. For example, there was no evidence submitted in connection with their summary judgment motion indicating the south-end

27

flaggers radioed the north-end flaggers when congestion at the intersection caused southbound traffic to come to a stop so that the north-end flagger could stop the southbound traffic or warn those motorists to prepare to stop.

Defendants purported to prioritize safety in establishing traffic controls and posting flaggers. However, they were aware of the circumstances of the intersection and the possibility of gridlock. Defendants failed to address these issues to prevent injury, even though they acknowledged that on a roadway project safety of motorists is an "obligation of the highest concern," and that, in establishing flagger stations, they would want "to provide [the traveling public] with some safe room to stop in their vehicles away from an intersection." The moral blame factor also supports the conclusion that defendants owed plaintiffs a duty of care.

### e. Policy of Preventing Future Harm

" 'The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible.' [Citation.] In general, internalizing the cost of injuries caused by a particular behavior will induce changes in that behavior to make it safer. That consideration may be 'outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability.' " (*Kesner, supra*, 1 Cal.5th at p. 1150.)

As we have noted, defendants asserted that it was not the custom or practice of construction contractors to keep intersections clear of traffic at all times when performing roadwork. Even assuming this to be true, it would seem wise for contractors to take intersection congestion into consideration when setting up traffic controls and posting flaggers where circumstances indicate that to do so would be beneficial and could prevent potential injury.

Moreover, it would seem that taking these matters into consideration and planning accordingly could have been easily done. Indeed, there would have been no apparent

cost to station the south-end flagger to the south of the intersection rather than to the north so the flagger could stop vehicular traffic before it entered the intersection, allowing southbound cars to turn left safely without stopping. Defendants have not presented any reason why such a procedure could not have been implemented or a countervailing reason for controlling the traffic in the way they did here. Based on the evidence before us, we conclude that, under the circumstances here, imposing a duty to take the specific safety concerns into consideration and establish traffic control procedures accordingly so as to keep the intersection clear is not unreasonable and could prevent future harm. (See *Pedeferri*, *supra*, 216 Cal.App.4th at p. 368 ["Imposing a duty to carefully load and secure cargo, with resulting liability for the negligent discharge of that duty, would be effective in discouraging negligence and thereby preventing future harm"].) Similarly, giving the flaggers at each end of the reversing lane closure the ability to communicate by radio so as to warn one another of traffic-related hazards would appear to carry little to no cost and also prevent future harm of the sort plaintiff suffered here.

Thus, the policy of preventing future harm also supports the conclusion that defendants owed plaintiff a duty of care.

### f. The Burden to Defendant and the Consequences to the Community of Imposing a Duty with Resulting Liability for Breach

Again, this case is nothing like *Bryant*, where the court concluded the consequences to the community cut against imposing a duty and thus concluded, "as a matter of policy," the defendant had no duty in the circumstances of that case. (*Bryant*, *supra*, 32 Cal.App.4th at p. 782.) As stated *ante*, imposing a duty here appears result in no real burden to defendants. Nor do we perceive a negative consequence to the community resulting from imposing a duty under the circumstances presented here. To the contrary, the motoring public would benefit.

**g. The Availability, Cost, & Prevalence of Insurance for the Risk**

It would appear that the availability, cost and prevalence of insurance would be no different from that required for highway construction work. And, as we concluded at the beginning of our analysis, highway contractors doing work on public highways or streets already owe to the traveling public a duty to protect motorists from injury that may result from the contractor's negligence. (*Ray, supra,* 98 Cal.App.4th at p. 1134; *Thirion, supra,* 193 Cal.App.2d at pp. 304-305; *Breslin*, *supra*, 152 Cal.App.2d at p. 786.) No additional or different insurance would appear necessary by the imposition of the duty we have described here.[6]

**4. Duty Conclusion**

Whether we consider the existence of a duty under the duty a highway contractor owes to motorists generally or if we analyze duty under the *Rowland* factors which guide whether to exempt a defendant from the general duty of care under Civil Code section 1714, subdivision (a), we conclude that defendants had a duty of care here. Indeed, as revealed by our analysis, none of the *Rowland* factors suggest a duty should not be

---

[6] Defendants have provided no argument concerning moral blame, preventing future harm, burden, and availability of insurance -- factors that " 'take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief.' " (See fn.5, *ante*; *Vasilenko*, *supra*, 3 Cal.5th at p. 1085, *Kesner*, *supra*, 1 Cal.5th at p. 1145.) They did, however, note the relevant factors courts employ for determining the existence of a duty, citing *Bily, supra*, 3 Cal.4th 370, 397, and *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*).) Both cases address the question of duty in the context of a claim of negligent breach of a contract, and at oral argument, plaintiffs expressly stated they were not advancing a negligent breach of contract claim. Nevertheless, other than one additional factor—the extent to which the transaction was intended to benefit plaintiff—the *Biakanja* factors are the same as those outlined in *Rowland*. (See *Biakanja*, at p. 650.) Despite listing these factors in their briefing on appeal, defendants offered no analysis concerning any of the pertinent factors other than foreseeability and the connection between defendants' negligent act and plaintiff's injury.

imposed here. Because defendants failed to establish the absence of a duty as a matter of law, we conclude that they were not entitled to summary judgment based on that ground.

### III. Breach

Defendants focus primarily on duty and do not address breach in their appellate briefing.

In their separate statement of undisputed material facts, plaintiffs stated that the "placement of the flagger stations north of the intersection of Ryan Ranch Road on August 23, 2013 increased the risk of a southbound left turning vehicle being unable to turn onto Ryan Ranch Road, and thereby increased the risk to the southbound motoring public, including" plaintiff. This statement was supported by a paragraph in Neuman's declaration. Neuman stated: "[h]ad the flagger station been located south of the intersection of Ryan Ranch Road traffic could have queued to the south of the intersection and not blocked northbound [*sic*][7] traffic from being able to turn left into Ryan Ranch Road. This would allow southbound left turning vehicles get [*sic*] safely and quickly out of roadway [*sic*] clearing the road for traffic approaching around the downhill curve. The placement of the flagger stations north of the intersection of Ryan Ranch Road on August 23, 2013 increased the risk of a southbound left turning vehicle being unable to turn onto Ryan Ranch Road, and thereby increased the risk to the southbound motoring public, including" plaintiff.[8]

Additionally, plaintiffs stated in their statement of undisputed facts that, "[w]hen deciding where to place the northbound flagger station, Tom Jacques did not take into consideration that if cars were stopped at the northbound flagger station and backed up in a line to where the intersection with Ryan Ranch Road was, then cars that were traveling

---

[7] See fn. 3, *ante*.

[8] Defendants objected to this statement on the basis that it lacked a proper foundation. The trial court overruled defendants' objection.

southbound on Latrobe Road wouldn't be able to make a left turn on Ryan Ranch Road." This statement was supported by Jacques's deposition testimony.

This evidence gave rise to a triable issue of material fact as to whether defendants, in placing the south-end flagger north of Ryan Ranch Road where backed-up traffic would block the intersection, without taking such potential hazards into consideration, breached the duty of care owed to plaintiff and the motoring public.

Contrary to the trial court's determination, we conclude that triable issues of material fact remained as to whether defendants breached their duty of care.

## IV.  Causation

### A.  The Parties' Contentions

Plaintiffs assert that the trial court erred in concluding that defendants met their burden of demonstrating the lack of a triable issue of material fact as to causation.  They assert that defendants failed to demonstrate the absence of any triable issue of material fact as to whether Smithson would have driven his car into plaintiffs' vehicle in the absence of defendants' negligence.  According to plaintiffs, defendants' position that Smithson would have rear-ended plaintiffs' vehicle regardless of defendants' conduct is pure speculation.  Plaintiffs further assert that defendants' actions constituted a substantial factor in causing the collision, and that, at a minimum, there remains a triable issue of material fact on the matter.

Defendants maintain that the sole cause of injury in this case was Smithson's negligence, emphasizing that Smithson has admitted the collision occurred because of his conduct.

### B.  Causation and the Substantial Factor Test

" 'In a negligence action, the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury.' [Citation.]  To prove causation, the plaintiff must show:  (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the

32

injury." (*Union Pacific Railroad Company v. Ameron Pole Products LLC* (2019) 43 Cal.App.5th 974, 980 (*Union Pacific*).)

"California has adopted the 'substantial factor' test for cause in fact determinations. [Citation.] Under that test, a defendant's conduct is a cause of a plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, *or* (2) the defendant's conduct was one of multiple causes sufficient to cause the alleged harm." (*Union Pacific, supra*, 43 Cal.App.5th at p. 981, italics added.) Thus, plaintiffs can satisfy the causation element if they " 'show the defendant's act or omission was a substantial factor in bringing about the plaintiff's harm.' " (*Id*. at pp. 981-982.)

" 'A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.' [Citation.] [¶] If a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm. Such defendant cannot avoid responsibility because some other person, or condition or event was also a substantial factor in causing the harm." (*Raven H., supra,* 157 Cal.App.4th at p. 1025, citing CACI Nos. 430 & 431.)[9]

---

[9] Even at trial, " ' "[A plaintiff] is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable [persons] may conclude that it is more probable that the event was caused by the defendant than that it was not. . . . If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case." ' " (*Raven H., supra,* 157 Cal.App.4th at pp. 1029-1030.)

## C. Analysis

There is no dispute that defendants were responsible for traffic controls at issue here. At the particular time immediately preceding the collision, and at the moment it occurred, southbound traffic was backed up on Latrobe Road because a southbound car could not turn left on Ryan Ranch Road as a result of defendants' traffic controls. Mere seconds after plaintiff stopped, Smithson's vehicle drove into the rear of plaintiff's vehicle.

Without question, a substantial factor in the accident was Smithson's driving. However, this does not preclude the existence of other substantial factors contributing to the accident. (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187 (*Yanez*); *Raven H*., *supra*, 157 Cal.App.4th at p. 1025.)

According to plaintiffs' expert, "[h]ad the flagger station been located south of the intersection of Ryan Ranch Road traffic could have queued to the south of the intersection and not blocked northbound [*sic*][10] traffic from being able to turn left into Ryan Ranch Road. This would allow southbound left turning vehicles get [*sic*] safely and quickly out of roadway [*sic*] clearing the road for traffic approaching around the downhill curve." Neuman stated that the "placement of the flagger stations north of the intersection of Ryan Ranch Road … increased the risk of a southbound left turning vehicle being unable to turn onto Ryan Ranch Road, and thereby increased the risk to the southbound motoring public, including" plaintiff. The trial court's written decision did not indicate it had considered whether there was a triable issue of fact as to whether defendants' conduct was a substantial factor in the collision and plaintiffs' injuries. It simply found, without analysis, that there was no triable issue of material fact on the element of causation. We agree with plaintiffs that defendants failed to eliminate all

---

**10** See fn. 3, *ante*.

triable issues of fact as to whether defendants' traffic controls were a substantial factor in the occurrence of the accident and plaintiff's injuries.

Defendants' position is essentially that Smithson's inattentive driving was the sole cause of the accident.[11] However, it appears that plaintiff would not have been in a position and location for Smithson to hit his vehicle were it not for defendants' negligent traffic controls. Thus, a triable issue of material fact remains as to whether those traffic controls were a substantial factor in the occurrence of the accident.

Defendants assert that Smithson "*admitted* that the collision was solely the result of his own negligence," implying that this resolves the causation question. Smithson's admissions, and the evidence in the record, certainly establish that his driving was a substantial factor resulting in the harm to plaintiff. However, his personal opinion as to whether there was another reason for the cause of the accident other than his inattentiveness does not establish as a matter of law that he was the sole cause of the accident, and his opinion is thus not dispositive on the causation issue. Indeed, looking at the evidence in the most favorable light for plaintiffs and considering that Smithson said he never saw the traffic jam in the intersection, we conclude that Smithson's opinion about the cause of the accident did not eliminate triable issues of fact related to the substantial factor test for causation.

---

[11] We note here that plaintiffs objected to Smithson's statements that he believed the primary reason for the accident was because he was not paying attention, and that he knew of no other reason for the cause of the accident other than his inattentiveness. There does not appear in the record a ruling on plaintiffs' objections, and it does appear that the trial court relied upon Smithson's deposition testimony to this effect, stating in its tentative decision that Smithson "was merely inattentive when he ran into the back of plaintiff's vehicle." In any event, as we explain, even if admissible, Smithson's personal opinion as to the cause or causes of the accident is not dispositive on the issue of causation.

Defendants argue that plaintiffs' position—that defendants' traffic controls were a substantial factor—amounts to " 'pure speculation or conjecture.' " We disagree with this characterization. On this record, liberally construing the evidence, viewing it in the light most favorable for plaintiffs, and drawing all inferences in their favor, as we must (*Jimenez, supra*, 237 Cal.App.4th at pp. 553-554), we conclude that a triable issue of material fact remains as to whether defendants' traffic controls were a substantial factor in the harm caused to plaintiff. As we have noted, a substantial factor " 'is a factor that a reasonable person would consider to have contributed to the harm.' " (*Raven H., supra,* 157 Cal.App.4th at p. 1025; CACI No. 430.) Here, the traffic controls caused northbound traffic to block the intersection, prevented southbound cars from turning left onto Ryan Ranch Road, caused southbound traffic to stop and back up, where cars remained stopped south of where Latrobe Road curved west, north of Ryan Ranch Road, and where plaintiff's car was stopped only seconds when Smithson's car ran into it. Rather than constituting "pure speculation or conjecture" as to whether defendants' traffic controls were a substantial factor in the harm to plaintiff, we conclude that there remained a triable issue of material fact as to that question.

We also note defendants' assertion that "[t]he notion that cars would not have been stopped waiting to make a turn onto the secondary road but for Western's actions is pure speculation." However, we consider the alternative circumstance where defendants did not post their flagger just north of Ryan Ranch Road, and instead posted the flagger to the south of Ryan Ranch Road. In that scenario, it can be said with virtual certainty that the southbound car intending to turn left would not have had to stop and wait to do so, because the northbound traffic in the reversing lane closure necessarily would have been stopped south of Ryan Ranch Road. Indeed, it can be fairly inferred from the

36

evidence that stopping the northbound traffic south of the intersection would have facilitated the flow of traffic without requiring vehicles to stop.[12]

" 'Like breach of duty, causation also is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is *no room for a reasonable difference of opinion*.' " (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864, italics added.) We conclude here that there is room for a reasonable difference of opinion as to whether defendants' traffic controls were a substantial factor in the harm to plaintiffs and thus we further conclude that a triable issue of material fact remains as to whether "the same harm would have occurred without [defendants'] conduct." (*Yanez, supra*, 221 Cal.App.4th at p. 187.)

## V.  Loss of Consortium Cause of Action

The trial court granted defendants summary judgment on plaintiffs' loss of consortium cause of action solely on the ground that it had granted summary judgment on the negligence cause of action. "A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 746.) A spouse's loss of consortium cause of action "stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury." (*Ibid*., citing *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1067 & *Brittell v. Young* (1979) 90 Cal.App.3d 400, 407, fn. 5.)

---

[12]  As to defendants' contention that cars would not have been stopped waiting to make a turn onto the secondary road but for their actions being pure speculation, one could also speculate that Smithson may have been more attentive to the cars in front of him if there had been no construction and no reversing lane closure, whereas proceeding with the flow of traffic through the reverse lane closure, he may have been lulled into a false sense of security, expecting some warning from defendants' personnel if there was danger or the need to stop ahead.

Because we are reversing the trial court's determination as to the negligence cause of action, we also reverse its determination as to the loss of consortium cause of action.

## DISPOSITION

The judgment is reversed. We remand the matter with instructions to the trial court to vacate its order granting defendants' motion for summary judgment and substituting therefor an order denying that motion, and for further proceedings consistent herewith. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                         /s/
                                               MURRAY, Acting P. J.

We concur:

       /s/
RENNER, J.

       /s/
KRAUSE, J.